## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES SURETY COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: _____ |
| SOLIDSCAPES, LLC and JACOB TRITES, Individually, | ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW, United States Surety Company ("United States Surety" or "Plaintiff" or "Surety") by and through its undersigned counsel, and files its Complaint against Solidscapes, LLC, a Georgia limited liability company, and Jacob Trites, Individually (collectively hereinafter referred to as "Defendants"), and in support thereof shows the Court as follows:

## PARTIES AND JURISDICTION

1.

United States Surety is a Maryland corporation, qualified and licensed to do business as a commercial surety and is subject to the jurisdiction of this Court. United States Surety was and is incorporated in the State of Maryland. United States Surety's principal place of business is One Texas Station Court, Suite 230,

Timonium, MD, 21093, USA.   United States Surety is therefore a citizen of Maryland.   United States Surety is a commercial surety that does business in the State of Georgia.   United States Surety is in the business of, among other things, issuing performance and payment contract bonds in a commercial context as surety for the performance of construction contracts.

2.

Defendant Solidscapes, LLC, ("Solidscapes" or "Principal") is a Georgia limited liability corporation, whose principal business address is located at P.O. Box 713, Lavonia, GA, 30553, USA, and may be served via its registered agent, Jacob Trites, who may be served at 151 Lakeview Drive, Lavonia, GA, 30553, and is subject to the jurisdiction of this Court.   All of the members of Solidscapes (Defendant, Jacob Trites) are citizens of Georgia.   Given the above, and that the citizenship of the members of Solidscapes are in the State of Georgia, Solidscapes is therefore a citizen of the State of Georgia.

3.

Defendant Jacob Trites ("Trites") is a member of Solidscapes, is a citizen of, resident of and domiciled in Georgia and may be served at 151 Lakeview Drive, Lavonia, GA 30553, and is subject to the jurisdiction of this Court.

4.

The Defendants all reside in Georgia.  Jurisdiction is proper in this Court. This Honorable Court possesses original jurisdiction over United States Surety's Complaint for Breach of Contract and Indemnification pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and the matter in controversy is between citizens of different states.  Defendants are joint and several obligors under an Indemnity Agreement to United States Surety.  The Indemnity Agreement was executed by the Defendants in Georgia.  The Indemnity Agreement is an agreement enforceable in the State of Georgia.

5.

This Honorable Court possesses the subject matter jurisdiction to declare the respective rights and other legal relations of United States Surety and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

6.

This Honorable Court possesses the subject matter jurisdiction to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 90(b) and 28 U.S.C. § 1391(b)(1) because all the Defendants reside and are domiciled within the Middle District of Georgia.   The individual Defendant resides in Franklin County, Georgia, and the principal on the bond, Solidscapes, LLC, has its principal place of business in Franklin County, Georgia.   Additionally, Defendants are joint and several obligors under an Indemnity Agreement to United States Surety and, therefore, venue is proper for this Court.  The Indemnity Agreement was executed by the Defendants in Georgia.   The Indemnity Agreement is an agreement enforceable in the State of Georgia.

## ALLEGATIONS COMMON TO ALL COUNTS

8.

On or about January 17, 2018, Solidscapes, LLC, executed a General Indemnity Agreement (the "Indemnity Agreement") for the benefit of United States Surety (sometimes referred to as "Surety") as inducement for United States Surety to issue surety bonds for and to Solidscapes, LLC.  A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit "A."

9.

On or about January 17, 2018, Jacob Trites, in his individual capacity, executed the Indemnity Agreement for the benefit of United States Surety.

10.

The Indemnity Agreement was executed by Defendants as inducement for Plaintiff to issue bonds on behalf of Defendant, Solidscapes, LLC.

11.

Under the provisions of paragraph III of the Indemnity Agreement, the Defendants agreed to:

> "...exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond…"

12.

Further, under the provisions paragraph X of the Indemnity Agreement, the Defendants agreed as follows:

> "…the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion…"

13.

In consideration of, and in reliance upon Defendants' execution of the aforementioned Indemnity Agreement, United States Surety as Surety did issue the following Performance Bonds and Payment Bonds (collectively "Bonds") identified by project name ("Project") and obligee:

| Project: | Obligee: | Bond No.: |
|---|---|---|
| Construction of Sanders Road Sidewalk | Forsyth County Board of Commissioners | 100407007 |

A true and correct copy of the Bonds are attached hereto as Exhibit "B."

14.

Claims have been asserted against the above-referenced Bonds. United States Surety has incurred losses, liabilities, costs and expenses as a result of the claims against the Bonds. United States Surety is subrogated to the rights of the claimants against Solidscapes, LLC. United States Surety hereby asserts these rights against Solidscapes, LLC and Jacob Trites. United States Surety has paid valid claims against the Bonds in the total amount of $217,333.46, itemized as follows:

| Bond No.: | Claimant: | Bond Claim Loss: |
|---|---|---|
| 100407007 | Forsyth County Board of Commissioners | $195,907.76 |
| 100407007 | Martin-Robbins Fence Co., Inc. | $9,170.00 |
| 100407007 | MTM Enterprises, Inc. | $7,162.50 |

| 100407007 | Smyrna Ready Mix Concrete, LLC | $5,093.20 |
|---|---|---|
| | | |
| | **Total:** | **$217,333.46** |

Additionally, indemnification and collateral security have been demanded of the Defendants.  The Defendants failed to indemnify Plaintiff or post collateral security as a result of the claims on the Bonds.

15.

United States Surety has demanded and hereby demands that the Defendants indemnify United States Surety under the terms of the Indemnity Agreement in an amount no less than $260,347.27, and to immediately deposit with United States Surety collateral in the amount of $260,347.27, which includes the losses described in paragraph 14 above and the attorneys' fees and costs as described in paragraph 16 below.  A true and accurate copy of United States Surety's prior demands upon each of the Defendants are attached hereto as Exhibit "C" and incorporated herein by reference.  The Defendants have failed and refused to indemnify or to deposit collateral security as required under the Indemnity Agreement.

16.

In addition to the claims paid, United States Surety has incurred and will continue to incur in future substantial costs and expenses, including, without limitation, attorney's fees, accountant's fees, and consulting fees in investigating and resolving claims made under the Bonds issued by United States Surety on

Solidscapes, LLC and Jacob Trites' behalf and in this action.  To date these costs and expenses amount to an amount no less than $43,013.81.  Pursuant to the terms of the Indemnity Agreement, the Defendants are responsible, jointly and severally for payment of these costs and expenses.  Thus, the total loss in this matter amounts to no less than $260,347.27 (which sum represents losses paid plus attorney's fees and costs to date).

## COUNT I – COLLATERAL SECURITY

### 17.

The Surety incorporates by reference the allegations set forth in Paragraphs 1 through 16 of this Complaint and re-alleges same as if fully set forth herein.

### 18.

Pursuant to the Indemnity Agreement, the Defendants are required to immediately deposit collateral security with the Surety to protect it with respect to any claims made under the Bonds.

### 19.

Defendants should be required by mandatory injunction to deposit collateral security with the Surety in an amount no less than $260,347.27.

### 20.

The Surety will suffer irreparable harm unless Defendants are required to specifically perform the collateral security provision of the Indemnity Agreement

because recovery of a money judgment against the Defendants for payment of their indebtedness to the Surety after it is reduced to judgment will not and cannot compensate the Surety for loss of the specific benefit of obtaining and holding valuable security now for the Defendants eventual performance of their indemnity obligations.

<div align="center">21.</div>

Because there is a substantial likelihood of success on the merits of the Surety's action against the Defendants, and because it would not be against public interest, the Surety requests that this Court issue a preliminary injunction requiring the Defendants to deposit the sum of at least $260,347.27 with United States Surety.

## COUNT II – SPECIFIC PERFORMANCE OF INDEMNITY AGREEMENT

<div align="center">22.</div>

United States Surety incorporates by reference the allegations set forth in Paragraphs 1 through 21 of this Complaint and re-alleges same as if fully set forth herein.

<div align="center">23.</div>

The Defendants entered into the Indemnity Agreement under which Defendants agreed to indemnify United States Surety for all loss, liabilities, attorneys' fees, costs and expenses arising by virtue of the Bonds.

24.

Demands have been asserted against the Bonds.  These demands have led to the losses described above.  United States Surety has incurred and continues to incur losses on the Bonds as a result of the claims on the Bonds.  United States Surety anticipates the possibility of further demands and claims being made on the Bonds.

25.

The Defendants have failed and refused to honor their obligations under the Indemnity Agreement.

26.

To date, United States Surety has incurred expenses and fees and expects in the future to incur additional charges, expenses, costs and fees under the Bonds for which it is entitled to indemnification and reimbursement under the Indemnity Agreement.

27.

Under the Indemnity Agreement, the Defendants are liable to United States Surety for all losses, costs, fees and expenses, including consultant and attorneys' fees, which have been incurred and/or will be incurred by in the future in connection with the Indemnity Agreement, the Bonds, and the Project.

28.

United States Surety is entitled to specific performance of all its rights and the Defendants obligations under the Indemnity Agreement including, without limitation, exoneration, indemnification and collateral deposit requirements and the Defendants are required to specifically perform all such obligations. United States Surety has and hereby demands such specific performance by Defendants.

29.

Unless Defendants are required to deposit collateral security with Plaintiff, Plaintiff will be irreparably damaged.

## COUNT III – BREACH OF INDEMNITY AGREEMENT

30.

United States Surety incorporates by reference the allegations set forth in Paragraphs 1 through 29 of this Complaint and re-alleges same as if fully set forth herein.

31.

Pursuant to the Indemnity Agreement, the Defendants are liable to United States Surety in the amount of all losses incurred as a result of, or in consequence of, the issuance of the Bonds.

32.

Demand has been made and is hereby made upon the Defendants to pay monies, costs, expenses and/or attorneys' fees under the Bonds in an amount to be proven at trial.

33.

United States Surety has previously and hereby demands indemnification and collateral security pursuant to the terms of the Indemnity Agreement from the Defendants for all sums, including costs and attorneys' fees, expended or to be expended by United States Surety under the Bonds as a result of Solidscapes, LLC and Jacob Trites' actual and/or alleged default of its obligations in an amount to be proven at trial.

34.

The Defendants have failed and refused to honor their obligations under the Indemnity Agreement to make payment pursuant to the Indemnity Agreement, and to protect United States Surety from liability and loss in connection with the issuance of the aforementioned Bonds, and to deposit collateral security with United States Surety pursuant to the terms of the Indemnity Agreement.

35.

The Defendants failure to make the foregoing payments and post collateral security as required under the Indemnity Agreement constitutes a breach of the

Indemnity Agreement and as a direct proximate result of said breach United States Surety has incurred damages and liability.

36.

All conditions precedent to United States Surety's right to indemnification and collateral security have been performed, waived, satisfied or otherwise excused by the Defendants.  Due to Defendants' breach, United States Surety is entitled to damages.

## COUNT IV - COMMON LAW INDEMNITY

37.

United States Surety incorporates by reference the allegations set forth in Paragraphs 1 through 36 of this Complaint and realleges same as if fully set forth herein.

38.

United States Surety is entitled to be indemnified by the Defendants, jointly and severally with respect to the losses suffered by United States Surety under the Bonds.

39.

The Defendants are in breach of their common law indemnity obligations to United States Surety.

40.

As a result of the Defendants' failure as aforesaid, United States Surety has and continues to be damaged thereby.

## **COUNT V – EXONERATION**

41.

United States Surety incorporates by reference the allegations set forth in Paragraphs 1 through 40 of this Complaint and re-alleges same as if fully set forth herein.

42.

United States Surety will be secondarily liable for all pending and/or future valid claims asserted against the aforementioned Bonds wherein Solidscapes, LLC is the principal.

43.

Under the equitable doctrine of exoneration, United States Surety is entitled, without first paying out any of its own funds, to require Defendants to discharge their obligations under the Indemnity Agreement for exoneration.

44.

If Defendants are not required to satisfy demands and/or claims already made or made in the future, United States Surety will be forced to incur further expenses.

## COUNT VI – OTHER AND FURTHER RELIEF

45.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 44 of this Complaint and re-alleges same as if fully set forth herein.

46.

Plaintiff prays for the Court to grant relief Quia Timet, and any and all other equitable relief that it believes just and proper.   Further, Plaintiff respectfully requests that:

1. That the Defendants be ordered to allow United States Surety's representative to inspect all financial and business records to determine the status of Defendants' business and finances, to be deposed by United States Surety's counsel immediately on the same subjects;

2. That the Defendants be ordered to post collateral pursuant to the Indemnity Agreement, in an amount no less than $260,347.27;

3. That the Defendants be ordered not to sell, transfer or dispose of any assets that may be used to satisfy their indemnification obligation; and

4. All other immediate remedies the Court may believe just and proper.

WHEREFORE, Plaintiff prays that it has the following relief:

(a) That, as to Count I, II and V, Defendants be ordered to specifically perform the following pursuant to the Indemnity Agreement:

(i) Comply with the collateral deposit requirement of the Indemnity Agreement, and post collateral in an amount no less than $260,347.27;

(ii) Exonerate the Surety; and

Page 15 of 16

(iii)   Indemnify the Surety in an amount no less than $260,347.27;

(b)   That, as to Counts III, IV and VI, this Court enter judgment against Defendants in favor of United States Surety in an amount no less than $260,347.27, plus interest, costs and attorney's fees and enter an Order compelling Defendants to post collateral security in an amount no less than $260,347.27;

(c)   That United States Surety be awarded all costs of this action, including attorneys' fees and such other relief as the Court may deem just and proper.

Respectfully submitted, this 22nd day of February, 2021.

THOMPSON LAW GROUP, LLC

*/s/ John D. Alexander*

John D. Alexander
Georgia Bar No.: 008887

3325 Paddocks Parkway
Suite 355
Suwanee, GA  30024
(770) 662-5999
jalexander@thompsonlawatl.com

# TOKIO MARINE HCC – SURETY GROUP

### General Indemnity Agreement

THIS GENERAL INDEMNITY AGREEMENT (hereinafter, the "Agreement") is made and entered into this ___16___ day of __January__, __2018__ by and among the Principal (as hereinafter defined):

SOLIDSCAPES, LLC

_____

(Insert full name of the Principal(s))

and Indemnitor (as hereinafter defined):

JACOB TRITES

_____

(Insert full name of the Indemnitor(s), if any)

jointly and severally, and is executed for the continuing benefit of the Surety (as hereinafter defined).

       NOW THEREFORE, in consideration of the premises set forth herein and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged by the Principal(s) and Indemnitor(s), the Principal(s) and Indemnitor(s), for themselves and their successors and assigns, hereby covenant and agree as follows:

## I.  DEFINITIONS

The terms listed below shall have the following meanings for purposes of this Agreement:

A. "Bond" or "Bonds" shall mean any contractual obligation, undertaking, contract of suretyship, guaranty or indemnity undertaken by the Surety, issued on behalf of or procured for any Principal by the Surety before, on, or after the date of this Agreement and any renewal, modification, extension or substitution of such obligation, undertaking, contract of suretyship, guaranty or indemnity.

B. "Contract" shall mean any agreement between or among any Principal and any one or more parties other than the Surety, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has executed or procured the execution of any Bond in connection therewith.

C. "Bonded Contract" shall mean any Contract in connection with which Surety has issued or procured a Bond.

D. "Event of Default" shall mean any one or more of the following:

1. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal to perform any Contract, or any obligation contained therein;

2. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal to perform any obligation contained in any Bond, or to perform or comply with any and all of the terms, covenants, and conditions of this Agreement;

3. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal or Indemnitor to perform any contract or agreement, other than this Agreement, to which the Surety and any Principal or Indemnitor shall be parties, including but not limited to, any security agreement, mortgage, deed of trust or other document or instrument delivered to the Surety for the purpose of providing collateral security of the obligations hereunder, or the non-renewal or failure to honor, by any issuer or bank, any letter of credit provided to or for the benefit of the Surety;

4. The declaration by any obligee or project owner that any Principal is in default under any Contract, irrespective of whether or not such Principal is actually in default under such Contract, or the acknowledgement by such Principal of its default under such Contract;

5. Any delay, failure, refusal or inability of any Principal to pay claims, bills or any other indebtedness incurred in, or in connection with, the performance of any Contract, in whole or in part, when such obligations come due;

6. The payment by the Surety of any claim under any Bond;

7. Any suit or other judicial or quasi-judicial proceeding, including arbitration, or other form of alternative dispute resolution, being commenced against the Surety as it relates to any Bond, Contract, Principal, or Indemnitor;

8. Any failure or refusal by any Principal or Indemnitor to perform any obligation under any provision or term of this Agreement.

9. Any failure by any Principal or Indemnitor to pay or discharge, when due or as demanded by the Surety, any indebtedness of any Principal to the Surety or to any obligee, or to any subcontractor, supplier, laborer or materialman or any other claimant on any Bonded Contract or under any Bond;

10. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;

11. Any failure by any Principal to notify the Surety, in writing, within five (5) days of such Principal's receipt of a claim, cure, show cause or other notice from any obligee relating to any Bond or any Bonded Contract;

12. Any failure by any Principal to notify the Surety, in writing, within ten (10) calendar days, of any increase(s) in the dollar amount or value of any Bonded Contract by more than twenty-five percent (25%);

13. The making of any untrue, inaccurate, misleading, or incomplete representation or warranty by any Principal or Indemnitor to the Surety or Surety's agent/broker including, without limitation, any representation as to the financial condition of any Principal or Indemnitor;

14. Any diversion of any contract funds by any Principal from any Bonded Contract to make payment of obligations on any other Contract or any other obligations, prior to obtaining the complete discharge of the Surety on the Bonded Contract from which funds have been diverted;

15. Any pledge or assignment by the Principal of any contract balance or contract receivable from a Bonded Contract to a third party, including a lender or factor, without the prior express written authority of the Surety;

16. The insolvency of any Principal or Indemnitor; the commencement of any insolvency, bankruptcy, receivership, trusteeship or other such proceeding of which any Principal or Indemnitor becomes a subject; or any assignment for the benefit of creditors by any Principal or Indemnitor;

17. Any individual Principal's or Indemnitor's death, adjudication of mental incompetence or disability, conviction of a felony, becoming a fugitive from justice or inability to be located after reasonable efforts;

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit A

18. Any material change in the character, identity, control, composition, beneficial ownership or legal status or existence of any Principal or Indemnitor who is not a natural person, it being understood that a change in five percent (5%) or more of the ownership or controlling interests in any such entity shall be deemed a material change;

19. The establishment by the Surety, in its sole and absolute discretion, of any reserve in any amount in connection with any Bond;

20. The failure of any Principal or Indemnitor to pay any premium, including, but not limited to, additional premiums based on an overrun or increase in contract price, to the Surety or to any agent of the Surety, when due or as demanded thereafter by the Surety;

21 In the event that any Principal or Indemnitor provides or pledges any property of any type to the Surety as collateral security for, or as a condition precedent to the issuance of Bonds, a decline or deterioration in the value of such property equal to or exceeding twenty percent (20%), as determined by the Surety in its sole and absolute discretion.

E. "Indemnitor" shall mean and include any and all Principal(s), as hereinafter defined, and each and every person or entity who executes this Agreement as an Indemnitor, together with his/her/its successors and assigns.

F. "Principal" shall mean any and all individuals or entities executing this Agreement as a Principal, together with his/her/its successors and assigns. In the event that Surety is requested to and does issue a Bond that names an Indemnitor (otherthan one who has executed this Agreement as a Principal) as the bond principal, then such Indemnitor shall also be deemed a Principal for all purposes under this Agreement.

G. "Surety" shall mean American Contractors Indemnity Company, U.S. Specialty Insurance Company, United States Surety Company, Texas Bonding Company, HCC Insurance Holdings, Inc., Tokio Marine HCC   Surety Group, their affiliates, divisions, subsidiaries, successors, assigns, co-sureties, reinsurers, fronters, partners and/or joint venturers; and any other person or entity which the Surety may direct, request or procure to act as the Surety or as a Co Surety on any Bond; and any other person or entity who executes a Bond at the request of the Surety.

## II.   INDEMNITOR REPRESENTATIONS AND ADDITIONAL CONSIDERATION

Each Indemnitor represents, warrants and guarantees, unconditionally and with the intention that the Surety shall rely upon such representations without investigation or verification, as follows:

A. The Indemnitor has read this Agreement carefully, has consulted with an attorney regarding this Agreement or has had an opportunity to consult with an attorney regarding this Agreement and has elected not to do so; and the Indemnitor understands this Agreement and that the Indemnitor is bound to the terms of this Agreement;

B. This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement. This Agreement is made and entered into as a result of negotiations in a free and active market in which the Indemnitor has and has had alternatives;

C. The Indemnitor intends: (i) that the Surety shall rely upon the Indemnitor's credit, including all of the Indemnitor's assets; (ii) that the Surety shall undertake legal or financial risk or forego rights or remedies that might otherwise be available to the Surety based upon such reliance; and (iii) that such reliance is reasonable;

D. The Indemnitor has a substantial, material and beneficial interest in: (i) obtaining one or more Bonds on behalf of the Principal; (ii) the Surety's forbearance from canceling one or more Bonds; and/or (iii) the performance and fulfillment of the obligations secured or to be secured by one or more Bonds; and

E. The Indemnitor's undertakings by and through this Agreement are given in consideration of the issuance (whether in the past, contemporaneously with the execution of this Agreement, or in the future) by the Surety of one or more Bonds and/or the Surety refraining from cancelling one or more Bonds.

## III.   INDEMNITY, EXONERATION AND HOLD HARMLESS

The Principals and Indemnitors shall, jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection.

The Principals and Indemnitors further agree that they shall be liable for, and that the Surety shall be entitled to charge and recover for, any and all payments made by the Surety in the good faith belief that: (1) any Principal or Indemnitor is or has been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability. The Surety shall be entitled to the rights and remedies set forth in this Section III and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by the Surety in good faith. The foregoing obligations shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

## IV.   ASSIGNMENT

A. As security for performance of all of the provisions of this Agreement, effective as of the date of this Agreement, the Principals and Indemnitors hereby assign, transfer, pledge, and convey to the Surety all of their right, title, and interest and estate in and to all real and personal property which they now own or hereafter acquire, including all income and receipts therefrom and increases and appreciation thereon, including, but not limited to:

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit A

1.  All right, title and interest in, to or arising in any manner out of any Contract or Bonded Contract, including the right to receive progress payments, payments on claims, changes or allowances, retained sums or any and all other monies due or to become due deriving in any manner from any Contract or Bonded Contract;
2.  All equipment, machinery, plant, tools, inventory, or materials which are now or may thereinafter be ordered, stored or utilized in connection with any Contract or Bonded Contract, whether or not any such materials are located at a construction site, in storage, in transit or elsewhere;
3.  All right, title and interest in, to, and arising out of all subcontracts or purchase orders let or entered into in connection with any Contract or Bonded Contract, including any and all surety bonds, guarantees or other undertakings supporting such subcontracts or purchase orders;
4.  Any and all rights arising out of, or monies due or to become due in connection with, any and all annuities, insurance policies, accounts receivables, and notes, and any claims and court actions of any kind;
5.  Any and all undisbursed loan funds, deposit accounts, or interest reserve accounts.
B.  The assignments set forth in this Section IV are in addition to, and shall not in any way impair, any rights of subrogation which the Surety has or may have.

## V.   UNIFORM COMMERCIAL CODE

With respect to the assignments set forth in Section IV of this Agreement, this Agreement constitutes a Security Agreement and Financing Statement for the benefit of the Surety, both in accordance with the provisions of the Uniform Commercial Code or similar statute of every jurisdiction in which such Code or statute is in effect.  This Agreement may be so used by the Surety without in any way abrogating, restricting or limiting its rights under this or any other Agreement between or among the Surety and any Principal or Indemnitor.  A copy of this Agreement shall be sufficient for the purposes mentioned in this Section.  The Surety may add schedules to this Agreement which describe more specifically items of security covered by this Assignment. The Indemnitor acknowledges and agrees that the Surety's disposition or settlement of a claim against a Bond will conclusively be deemed to have been commercially reasonable so long as the settlement of the claim is otherwise in accordance with the standards set forth in this Agreement or otherwise as required by applicable law.

## VI.   ATTORNEY IN FACT

The Principals and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to the Surety in this Agreement.  In the name of any Principal or Indemnitor, the Surety may make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect to the intent and meaning of the within assignments and under all other provisions of this Agreement.  The Principals and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.  Without limiting the generality of the foregoing, the Principals and Indemnitors expressly agree and recognize that the powers given to the Surety as attorney in-fact include the powers and authority to execute any and all documents (including, but not limited to, deeds of trust, mortgages, checks, stock certificates, and bonds) and to take any and all actions that the Surety may deem necessary in order to liquidate or acquire any real or personal property assigned, transferred to, or acquired by the Surety as security, indemnity, or reimbursement in connection with the obligations under this Agreement.

## VII.  TRUST FUNDS

All funds received by any Principal or Indemnitor, or which are or become due under any Bonded Contract (regardless of who has possession of such funds), are trust funds in which the Surety has an interest, and which the Principal and Indemnitor pledge for the benefit of and payment to the Surety as reimbursement to the Surety for any actual or potential liability, loss, cost or expense the Surety may sustain or incur under any Bond or which is otherwise recoverable under this Agreement.  If the Surety discharges any obligation to a claimant under a Bond, it shall be entitled to assert the claims of such claimant to the trust funds. Any Principal or Indemnitor shall, upon demand of the Surety, deposit or cause to be deposited said trust funds either in an account or accounts to be held or maintained by the Surety and/or in one or more accounts with a bank, third party contract escrow agent or similar depository approved by the Surety.  Withdrawal(s) from any such account(s) shall be signed, executed, or otherwise approved in writing by an authorized representative of the Surety, including, but not limited to, a third-party escrow agent.  Said trust or trusts shall terminate on the payment by the Principal and Indemnitor of all of the obligations for the payment of which the trust or trusts are created or upon the expiration of twenty (20) years from the date hereof, whichever occurs first.

## VIII.  SETTLEMENTS

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract.  If, however, any Principal or Indemnitor desires that the Surety consider adjusting, settling, prosecuting, defending, compromising, litigating, protesting, or appealing, any claim, demand, suit, award, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:
A.  Give written notice to the Surety to this effect by certified or registered mail; and
B.  Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement. The Surety shall be entitled to utilize counsel of its own choice in prosecuting, defending, resisting, litigating or appealing any such claim, demand, suit, award or judgment, or in appealing from any judgment, award or assessment, whether or not any Principal or Indemnitor also provides its own counsel, and all associated costs and expenses shall be recoverable by the Surety pursuant to this Agreement.

Performance of both sub-Section A and B of this Section VIII shall be an absolute condition precedent to the right of a Principal or Indemnitor to challenge the Surety's good faith with respect to settlement of any claims asserted against the Surety.  Performance of both sub-Sections A and B of this Section IX shall not, however, in any way diminish the right of the Surety to compromise, settle, pay, or otherwise discharge any claim, demand, suit, award or judgment in its sole and absolute discretion, subject only to its obligation of good faith as provided herein.

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit A

In the event of any payment by the Surety, an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of payment and, in the absence of fraud, the voucher or vouchers constituting prima facie evidence of actual fraud, shall be final, conclusive and binding upon any Principal or Indemnitor in any claim, suit or other proceeding by the Surety.

## X. DEPOSIT WITH SURETY

A. If an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion. Such collateral shall be held by the Surety as collateral security in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with the Surety or any other benefits and protections afforded to the Surety by this Agreement or any other agreement.

B. The Surety shall have the right, at any time and without notice or legal process, to: (1) deposit, invest, convert, cash, exchange, renew, sell or otherwise dispose of such collateral or the proceeds thereof in any manner, in such form and on such terms as it deems proper; (2) use such collateral, or any part thereof, at any time, in payment or compromise of any premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement, or to reimburse itself in the event that the Surety shall have paid or subsequently pays any such premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement. However, the Surety shall have no obligation to invest or to provide a return on any collateral security deposited pursuant to this Section X.

C. In the event of a sale or other transfer or liquidation of any collateral, the Surety shall be liable or accountable to the Principals and Indemnitors only for surplus funds realized after all obligations to the Surety pursuant to this Agreement or otherwise have been met.

D. The Surety shall not be liable to any Principal or Indemnitor for any actions taken by the Surety pursuant to this Section X under the good faith belief that it was liable or potentially liable for any payment made, whether or not such liability actually exists or existed. The Surety shall not be liable to any Principal or Indemnitor for any diminution in value, loss, damage or destruction of or to collateral held by the Surety, no matter how such diminution in value, loss, damage or destruction may occur.

E. The Principals and Indemnitors recognize, acknowledge and agree that the amount of any collateral demand made under this Section X shall be deemed a liquidated amount, immediately due and owing upon demand.

F. The Principals and Indemnitors shall be entitled to a refund of any unused portion of any collateral security deposited pursuant to this Section X upon termination of the Surety's liability on all Bonds and the performance by the Principals and Indemnitors of all obligations to the Surety pursuant to this Agreement.

## XI. TAKEOVER

Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, in its sole and absolute discretion, and is hereby authorized to take possession of any part or all of the work under any Bonded Contract and, at the cost and expense of the Principals and Indemnitors, to complete or to arrange for the completion of such Bonded Contract. If the Surety elects to take possession as provided in this Section, (1) the Principals and Indemnitors shall promptly, upon demand, pay to the Surety all costs, losses and expenses incurred by the Surety or otherwise recoverable pursuant to any of the provisions of this Agreement, and (2) the Surety shall have the right, but not the obligation, to take possession of the Principals' equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for the completion of any Bonded Contract.

## XII. ADVANCES

The Surety, in its sole and absolute discretion, is authorized and empowered, but not required, to guaranty loans or to advance or lend to or for the account of the Principals any money which the Surety may see fit, in connection with any Bonded Contract. Any such payments made or obligations incurred by the Surety (including any and all related costs and expenses) shall be conclusively deemed to be a loss to the Surety for which the Principals and Indemnitors shall be liable under this Agreement. If the Surety makes any advances or loans pursuant to this Section, it will not be obligated to monitor or ensure any particular application of the proceeds thereof, and the obligations of the Principals and Indemnitors under this Agreement shall not be affected by the fact that some or all of the proceeds thereof may not have been utilized as intended. The Surety retains the absolute right, in its sole and absolute discretion, with or without cause and with or without notice, to cancel any guaranty or to cease advancing or lending money to or for the account of the Principals.

## XIII. BOOKS, RECORDS AND INFORMATION

The Principals and Indemnitors shall furnish to the Surety such information as the Surety may request from time to time concerning the following: (1) the financial condition of the Principals and Indemnitors; (2) the status of work under any Contract; (3) the condition or status of the performance of any Contract; (4) the payment of any obligations incurred in connection with any Contract; and (5) the status of claims or entitlements of any Principal in connection with any Contract, or in connection with any subcontract, supply or service accounts such Principal may have with third parties in connection with any Contract. Until the Surety's liability under all Bonds is terminated, the Surety shall have the right to access all of the books, records and accounts of the Principals and Indemnitors, wherever located, at any reasonable time, and upon reasonable notice. The Surety shall have access to any information and documents maintained on behalf of or in connection with the Principals and Indemnitors: (1) at any banks or depositories; (2) with any obligees on any Bond; and (3) by certified public accountants (or other accountants), credit reporting agencies, materialmen, supply houses or any other persons, firms, or corporations doing business with the Principals and/or Indemnitors, and all of the foregoing entities are hereby expressly authorized to furnish to the Surety any information requested by it. The Principals and Indemnitors hereby further authorize the Surety, through its representatives, to visit job sites and projects described in any Contract, to obtain access to all job records and personnel or any owners or obligees to determine the status of work on any Contract, and to obtain any and all other information and documents deemed necessary in the Surety's sole and absolute discretion for the protection of its interests. Presentation of this Agreement shall constitute the Principals' and Indemnitors' consent to the release of all such information and an express waiver of any and all applicable privileges. The Surety's entitlement to such information is not dependent on the occurrence of an Event of Default.

---

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit A

IX.   REIMBURSEMENT

Exhibit A

## XIV.  WAIVER OF NOTICE
The Principals and Indemnitors waive all notice of: (1) the execution of any Bond; (2) the acceptance of this Agreement; (3) any default; (4) any act(s) giving rise to any claim or liability under any Bond or this Agreement; (5) any and all liability of the Surety under any Bond; and (6) any facts or information concerning the rights or liabilities of the Surety, the Principals or Indemnitors. The Principals and Indemnitors shall be liable hereunder notwithstanding any lack of notice of any kind to which they otherwise might have been entitled, and notwithstanding any defenses they otherwise might have been entitled to make.

## XV.  RIGHTS OF SURETY
The Surety shall have the right, in its sole and absolute discretion, without notice to the Principals or Indemnitors, to:
A.  Increase or decrease the penalty or penalties of any Bond, to change any obligees thereon, to execute any continuations, enlargements, modifications or renewals thereof or substitution therefor with the same or different conditions, provisions, or obligees, and with the same, larger or smaller penalties, it being agreed that this Agreement shall apply to and cover such new or altered Bond or renewals even though the consent of the Surety may or does substantially increase the liability of the Principal or Indemnitor; or
B.  Take such steps as the Surety may deem necessary or expedient to obtain its release from liability or lessen or mitigate its liability under any Bond or in connection with any Contract; or
C.  Assent to any changes in any Contract, including, but not limited to, any change in the time for completion or performance of any Contract and to payments or advances thereunder; or
D.  Make, assent to, or take any assignment.

## XVI.  SUITS
In the event of any Event of Default, the Surety may, in its discretion, bring separate suits as causes of action accrue, or otherwise, and the bringing of suit or recovery of judgment upon any cause of action or the failure to commence suit on any cause of action shall not prejudice, waive, bar, limit, impair or estop the Surety's right to bring other suits upon other causes of action, against the same or different parties. The Surety may bring separate suits with respect to any claims and against any or all or less than all of the Principals or Indemnitors, and the bringing of, entry of judgment in, or compromise or settlement of, any such suit (or claim upon which such suit is based) shall not prejudice, waive, bar, limit, impair or estop the bringing of any other such suit(s).

## XVII.  CHOICE OF FORUM, VENUE, JURISDICTION AND CHOICE OF LAW
The Principals and Indemnitors hereby consent to enforcement of this Agreement and submit themselves to personal jurisdiction in, at the Surety's election, any federal or state court in the State of Maryland or in any jurisdiction in which (1) the Surety may sustain or pay any loss for which the Principals and Indemnitors may be liable; (2) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond; (3) any construction project may be located which is the subject of any Bonded Contract; or (4) any assets of any Principal or Indemnitor may be located.

For the purpose of any litigation brought by the Surety under this Agreement, all obligations of the Principals and Indemnitors are performable, and all monies due the Surety hereunder are payable, in the jurisdiction in which the Surety files the litigation, and this Agreement shall be construed and enforced in accordance with the laws of the state in which the Surety files the litigation, without regard to principles of conflict of laws.

## XVIII.  TERMINATION
Any Principal or Indemnitor may terminate this Agreement – prospectively and not retroactively   by giving 30 days' written notice to the Surety at the address set forth below. Any such termination shall become effective thirty (30) days following receipt of the notice by the Surety. Any such termination shall apply only to the Principal(s) and/or Indemnitor(s) giving notice and only to Bonds issued by the Surety after the effective date. Any notice of termination shall not operate to modify, bar, discharge, limit, affect or reduce the terminating party's or parties' obligations with respect to: (1) any Bond which is or was executed prior to the effective date; (2) any Bond executed after the effective date, upon the award of any Contract to any Principal on a bid or proposal with respect to which the Surety has executed any bid or proposal Bond, consent of surety, or similar undertaking prior to the effective date of termination; (3) any Bond which the Surety has become obligated to execute prior to the effective date of termination; (4) the renewal, extension, substitution or modification of any of the foregoing Bonds, even though such renewal, extension, substitution or modification occurred after the effective date.

## XIX.  WAIVER OF JURY TRIAL
**THE PRINCIPALS AND INDEMNITORS EXPRESSLY AGREE THAT ANY SUIT, ACTION OR PROCEEDING BROUGHT OR INSTITUTED PURSUANT TO THIS AGREEMENT OR PURSUANT TO ANY BOND, CONTRACT OR BONDED CONTRACT SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING.**

## XX.  SPECIFIC PERFORMANCE
The Principals and Indemnitors acknowledge that any failure to pay to the Surety, immediately upon demand, the sums demanded by the Surety pursuant to Sections III and/or X and/or to provide access to books, records and information as required by Section XIII hereof shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Principals and Indemnitors agree that Surety shall be entitled, at its election, to immediate injunctive relief for specific performance of any and all obligations of the Principals and Indemnitors under this Agreement, and the Principals and Indemnitors hereby waive any claims or defenses to the contrary.

## XXI.  GENERAL PROVISIONS
A.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which, together, shall constitute one and the same instrument. Any scanned or electronically digitized copy of this Agreement regardless of who created such copy  shall be as effective, and may be used by the Surety, for all purposes as though it were an original document.
B.  The Surety makes no representation as to the validity or acceptability of any Bonds provided pursuant to this Agreement. The Principals and Indemnitors shall have the sole responsibility to determine whether Bonds which they and the Surety may execute are in proper form, and they shall have no claim against the Surety arising out of or in any manner relating to

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

HCC Surety GIA 11.16    - 5 -    **Exhibit A**

the failure or refusal of any person or entity to award any contract to any Principal or Indemnitor or to accept any Bond executed and delivered by the Surety or that the Surety has been requested to execute and deliver.

C.  The Principals and Indemnitors shall pay when due to the Surety all premiums and charges of the Surety and/or its agent/broker for any Bond in accordance with the Surety's rate filings and manual of rates, or as otherwise may be agreed.

D.  The Principals and Indemnitors agree that there have been no oral or other agreements of any kind as a condition precedent or to induce the execution and delivery of this Agreement by any party.

E.  The Surety has no obligation, and may, in its sole and absolute discretion, decline, to issue or to execute any Bond requested or applied for.  The execution by the Surety of a bid or proposal Bond, or consent of surety, or any similar undertaking shall not obligate the Surety to issue or execute any final or other Bond that may be required in connection with any award that may be made under the proposal for which the bid or proposal Bond, or consent of surety, is given.

F.  Delivery of this Agreement by any Principal or Indemnitor to the Surety and reliance by the Surety on the representations and promises set forth in this Agreement shall be conclusively presumed from the possession by the Surety or the Surety's agent/broker of a signed original or copy of this Agreement.

G.  Absent express written agreement to the contrary, the liability of the Principals and Indemnitors under this Agreement shall be unaffected by any other agreement between any, some or all of the parties to this Agreement relating to the same subject matter.

H.  The rights granted herein are in addition to, and shall not be deemed a waiver of, the Surety's equitable subrogation or any other rights under law or in equity.

I.  Any and all other rights which the Surety may have or acquire against the Principals and Indemnitors or others under any other or additional agreements shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.

J.  This Agreement sets forth executory undertakings of the Principals and Indemnitors only; there are no enforceable promises made by the Surety in this Agreement.  The Principals and Indemnitors acknowledge that the Surety shall not be required to sign this Agreement; however, if the Surety acknowledges or accepts this Agreement in writing, such written acknowledgment or acceptance shall constitute a part of this Agreement.

K.  Any right that any Principal or Indemnitor has against any other Principal or Indemnitor for indemnity or contribution is subordinate to the Surety's rights under this Agreement.

L.  In the event that the Surety (1) procures the execution of any Bond by any other surety or sureties, (2) executes any Bond with co-sureties, or (3) reinsures any portion of any Bond with reinsuring sureties, then the provisions of this Agreement shall also inure to the benefit of such other sureties, co sureties and reinsuring sureties to the extent of their interests.

M.  The Indemnitors shall, at all times, remain familiar with the financial condition and operations of the Principals and the status of all Contracts.

N.  The Principals and Indemnitors will, at any time upon the request of the Surety, procure the discharge or release of the Surety from any Bond and from any and all liability by reason thereof.  The Surety may, at any time, take such actions as it deems necessary or proper to obtain its release from any and all liability under any Bond.

O.  The Surety's exercise of, or failure to exercise, any right, remedy, power or entitlement under this Agreement or any other agreement between any or all of the parties shall not be deemed to be an election of remedy, estoppel or a waiver of any other right, remedy, power or entitlement.  The Surety is not required to exhaust any remedy or right against any Principal or Indemnitor before asserting its rights against any other Principal or Indemnitor.  The Surety is not required to pursue its rights against any collateral it may hold before asserting its rights under this Agreement.  The Principals and Indemnitors hereby waive any defense that this Agreement was executed subsequent to the date of any Bond.

P.  This Agreement is binding on any Principal or Indemnitor who signs it even if: (1) other identified Principals or Indemnitors fail to sign it; or (2) the execution by any Principal or Indemnitor is defective or invalid for any reason.

Q.  This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety and shall be construed to provide the most extensive protection possible to the Surety within any limits imposed by applicable law.  If any provision of this Agreement cannot be reasonably construed in such a way as to be enforceable under applicable law, then such provision or term shall be deemed to be excised from this Agreement, and this Agreement shall be enforced as though such provision had never been a part hereof.

R.  This Agreement may not be altered or modified orally.  No change or modification shall be valid unless made by written endorsement, executed by an officer of the Surety and all of the Principals and Indemnitors.  No agent/broker of the Surety shall have the right to alter the termination or any other provisions of this Agreement, and no Principal or Indemnitor may rely upon any oral or written representations by any such alleged agent/broker of the Surety and must strictly adhere to the provisions hereof in order to terminate this Agreement.

S.  All written notices to the Surety pursuant to this Agreement must be sent by registered or certified mail, return receipt requested, to the Surety at 20 West Aylesbury Road, Timonium, Maryland 21093.

T.  Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa.  The Section headings herein are included for convenience only and shall not be deemed to be part of this agreement.

IN WITNESS WHEREOF, the Principal and Indemnitor hereby execute this Agreement, under seal.

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

RCC Surety GIA 11-16

Exhibit A

INDIVIDUAL PRINCIPALS OR INDEMNITORS

| Individual Principal/Indemnitor | | |
|---|---|---|

**JACOB TRITES**

*Printed Individual Principal/Indemnitor Name* — *Signature* — *Initials*

151 LAKE VIEW DRIVE, LAVONIA, GA 30553

*Address* — *Witness Signature*

**Witness and Notary Acknowledgment**

STATE OF ___Georgia___

COUNTY OF ___Franklin___

On this __17__ day of __Jan__ 20_18_, before me, a Notary Public of the State of GEORGIA personally appeared

**JACOB TRITES** _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

_____     My Commission Expires: _6 . 7 . 21_

Notary Public

| Individual Principal/Indemnitor | | |
|---|---|---|

*Printed Individual Principal/Indemnitor Name* — *Signature* — *Initials*

*Address* — *Witness Signature*

**Witness and Notary Acknowledgment**

STATE OF _____

COUNTY OF _____

On this ___ day of _____ 20___, before me, a Notary Public of the State of _____, personally appeared
_____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

_____     My Commission Expires: _____

Notary Public

| Individual Principal/Indemnitor | | |
|---|---|---|

*Printed Individual Principal/Indemnitor Name* — *Signature* — *Initials*

*Address* — *Witness Signature*

**Witness and Notary Acknowledgment**

STATE OF _____

COUNTY OF _____

On this ___ day of _____ 20___, before me, a Notary Public of the State of _____, personally appeared
_____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

_____     My Commission Expires: _____

Notary Public

| Individual Principal/Indemnitor | | |
|---|---|---|

*Printed Individual Principal/Indemnitor Name* — *Signature* — *Initials*

*Address* — *Witness Signature*

**Witness and Notary Acknowledgment**

STATE OF _____

COUNTY OF _____

On this ___ day of _____ 20___, before me, a Notary Public of the State of _____, personally appeared
_____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

_____     My Commission Expires: _____

Notary Public

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit A

CORPORATE/LLC/OTHER PRINCIPALS OR INDEMNITORS

Corporate/LLC/Other Principal/Indemnitor

SOLIDSCAPES, LLC; P.O. BOX 713, LAVONIA, GA 30553

JACOB TRITES, PRESIDENT

Printed Principal or Indemnitor Name and Address | Printed Name and Title of Authorized Signer

Authorized Signature | Initials | Witness Signature

Witness and Notary Acknowledgment

STATE OF Georgia

COUNTY OF Franklin

On this 17 day of Jan 20 18, before me, a Notary Public of the State of GEORGIA, personally appeared
JACOB TRITES , known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my
presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of SOLIDSCAPES, LLC.

IN WITNESS THEREOF, I set my hand and official seal.

Notary Public

My Commission Expires: 6.7.21

Corporate/LLC/Other Principal/Indemnitor

Printed Principal or Indemnitor Name and Address | Printed Name and Title of Authorized Signer

Authorized Signature | Initials | Witness Signature

Witness and Notary Acknowledgment

STATE OF

COUNTY OF

On this _____ day of _____ 20 ____, before me, a Notary Public of the State of _____, personally appeared
_____ , known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my
presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

My Commission Expires: _____

Notary Public

Corporate/LLC/Other Principal/Indemnitor

Printed Principal or Indemnitor Name and Address | Printed Name and Title of Authorized Signer

Authorized Signature | Initials | Witness Signature

Witness and Notary Acknowledgment

STATE OF

COUNTY OF

On this _____ day of _____ 20 ____, before me, a Notary Public of the State of _____, personally appeared
_____ , known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my
presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

My Commission Expires: _____

Notary Public

Corporate/LLC/Other Principal/Indemnitor

Printed Principal or Indemnitor Name and Address | Printed Name and Title of Authorized Signer

Authorized Signature | Initials | Witness Signature

Witness and Notary Acknowledgment

STATE OF

COUNTY OF

On this _____ day of _____ 20 ____, before me, a Notary Public of the State of _____, personally appeared
_____ , known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my
presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

My Commission Expires: _____

Notary Public

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit A

# HCC SURETY GROUP
## BLANKET AUTHORIZATION FORM
### Page 1 of 1

Authority is hereby granted to any Individual, Firm or Corporation and any financial institution to furnish HCC Surety Group upon its request, with any information concerning or pertaining to the undersigned's financial standing, credit or manner of meeting obligations. A copy of this agreement shall be considered the same as the original. This authorization is to remain in force until rescinded by the applicant in writing.

_____    1-16-18
Signature                 Date
JACOB TRITES
Printed Name

████████
Social Security Number
151 LAKE VIEW DRIVE
Home Address (Street)
LAVONIA, GA 30553
City, State, Zip

SOLIDSCAPES, LLC      1-16-18
Corporation             Date
_____
President (Jacob Trites)

Sole Ownership

████████
Federal ID Number
P.O. BOX 713
Business Address (Street)
LAVONIA, GA 30553
City, State, Zip

Exhibit A

Bond No. 100407007

## PERFORMANCE BOND

PROJECT NAME: Forsyth County Georgia, sidewalk on Sanders Road
BID NUMBER: 18-71-3150

KNOW ALL MEN BY THESE PRESENTS, That

Solidscapes, LLC
(Name of Contractor)

326 Bartson Street, Lavonia, GA 30553
(Address of Contractor)

a  Limited Liability Corporation
(Corporation, Partnership or Individual)

hereinafter called Principal, and

United States Surety Company
(Name of Surety)

One Texas Station Court, Suite 230, Timonium, MD 21093
(Address of Surety)

a Corporation of the State of ___Maryland___, and a surety authorized by law to do business in
the State of  Georgia, hereinafter called Surety, are held and firmly bound unto

Forsyth County Board of Commissioners

110 E. Main Street, Cumming, Georgia  30040

hereinafter referred to as Obligee, are held and firmly bound unto said Obligee and all persons doing work
or furnishing skill, tools, machinery, supplies, or material under or for the purpose of the Contract
hereinafter referred to, in the penal sum of Three Hundred Forty-Five Thousand, Six Hundred Forty-Four and 50/100 in lawful
money of the United States, for the payment of which sum well and truly to be made, we bind ourselves,
our heirs, executors, administrators and successors, jointly and severally, firmly by these presents.

This condition of this obligation is such, as whereas the Principal entered into a certain contract, hereto
attached with the Obligee, dated  09 - 27 - 18  , 2018.

Exhibit B

Bond No. 100407007

PERFORMANCE BOND

NOW, THEREFORE THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall well, truly, fully and faithfully perform said contract according to its terms, covenants, conditions, and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Obligee, with or without notice to the Surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreement of any and all duly authorized modifications of said contract that may hereafter be made, then this obligation shall be void, otherwise to remain in full force and effect.

PROVIDED FURTHER, that said Surety to this Bond, for value received, hereby stipulates and agrees that no change, extension of time, alterations or additions to the terms of the Contract or to the Work to be performed thereunder shall in any way affect its obligation on this bond, and it does hereby waive notice of any such change, extension of time, alterations, or additions to the terms of the Contract or to the work to be performed thereunder.

PROVIDED, FURTHER, that Principal and Surety agree and represent that this bond is executed pursuant to and in accordance with the applicable provisions of the Official Code of Georgia Annotated, as Amended, including, but not limited to, O.C.G.A. 13-10-1, et seq. and 36-86-101, et.seq., and is intended to be and shall be construed as a bond in compliance with the requirements thereof.

(Signatures Next Page)

(This space intentionally left blank)

Exhibit B

Bond No. 100407007

BID NUMBER: 18-71-3150
Page 3

PERFORMANCE BOND

Signed, sealed, and dated this *27th* day of *September* A.D., 2018.

ATTEST:

_____
(Principal Secretary)

Solidscapes, LLC
_____
(Principal)

(SEAL)

> NINA GOSNELL
> NOTARY PUBLIC
> Stephens County
> State of Georgia
> My Comm. Expires June 12, 2020

By: _____
Jacob Trites, Managing Member

_____
(Witness as to Principal)

326 Bartson Street, Lavonia, GA  30553
_____
(Address)

326 Bartson Street, Lavonia, GA  30553
_____
(Address)

United States Surety Company
_____
(Surety)

ATTEST:

_____
(Attorney-in-Fact) Emily Golecki   GA LICENSED Agent

By: _____
(Attorney-in-Fact and Resident Agent)

(SEAL)

_____
(Witness as to Surety) Maria Zayas

31 Park Commerce Way Suite 500 Savannah, GA 31405
_____
(Address)

31 Park Commerce Way Suite 500 Savannah, GA 31405
_____
(Address)

_____

NOTE: Date of Bond must not be prior to date of Contract.  If Contractor is Partnership, all partners should execute Bond.

IMPORTANT: Surety companies executing Bonds must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the State where the project is located.

Exhibit B

Bond No. 100407007

## PAYMENT BOND

BID NUMBER: 18-71-3150

KNOW ALL MEN BY THESE PRESENTS, That

Solidscapes, LLC
(Name of Contractor)

326 Bartson Street, Lavonia, GA  30553
(Address of Contractor)

a  Limited Liability Corporation
          (Corporation, Partnership or Individual)

hereinafter called Principal, and

United States Surety Company
(Name of Surety)

One Texas Station Court, Suite 230, Timonium, MD 21093
(Address of Surety)

a Corporation of the State of  Maryland          , and a surety authorized by law to do business in the State of Georgia, hereinafter called Surety, are held and firmly bound unto

Forsyth County Board of Commissioners

110 E Main Street, Cumming, Georgia  30040

hereinafter called Obligee, for the use and protection of all subcontractors and all persons supplying labor, services, skill, tools, machinery, materials and/or equipment in the prosecution of the work provided for in the contract hereinafter referred to in the full and just sum of $    345,644.50          in lawful money of the United States, for the payment of which sum, well and truly to be made, the Principal and Surety bind themselves, their, and each of their heirs, executors, administrators, successors and assigns, jointly and severally firmly by these presents.

The condition of this obligation is such, as whereas the Principal entered into a certain contract, hereto attached, with the Obligee, dated  09 – 27      , 2018 for Forsyth County.

Exhibit B

Bond No. 100407007

BID NUMBER: 18-71-3150

Page 2

NOW, THEREFORE THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall well, truly, and faithfully perform said contract according to its terms, covenants and conditions, and shall promptly pay all persons furnishing labor, materials services, skill, tools, machinery and/or equipment for use in the performance of said Contract, then this obligation shall be void; otherwise it shall remain in full force and effect.

All persons who have furnished labor, materials, services, skill, tools, machinery and/or equipment for use in the performance of said Contract shall have a direct right of action on this Bond provided payment has not been made in full within ninety (90) days after the last day on which labor was performed, materials, services, skill, tools, machinery, and equipment furnished or the subcontract completed.

PROVIDED FURTHER, that said Surety to this Bond, for value received, hereby stipulates and agrees that no change, extension of time, alterations, or additions to the terms of the Contract or to the Work to be performed thereunder shall in any way affect its obligation on this bond, and it does hereby waive notice of any such change, extension of time, alterations, or additions to the terms of the Contract or to the work to be performed thereunder.

PROVIDED, HOWEVER, that no suit or action shall be commenced hereunder by any person furnishing labor, materials, services, skill, tools, machinery, and/or equipment having a direct contractual relationship with a subcontractor, but no contractual relationship express or implied with the Principal:

Unless such person shall have given notice to the Principal within ninety (90) days after such person did, or performed the last of the work or labor, or furnished the last of the materials, services, skill, tools, machinery and/or equipment for which claim is made stating with substantial accuracy the amount claimed and the name of the party to whom the materials, services, skill, tools, machinery and/or equipment were furnished, or for whom the work or labor was done or performed. Such a notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the Principal, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the State in which legal process may be served in the State in which the aforesaid project is located, save that such service need not be made by a public officer, and a copy of such notice shall be delivered to the Obligee, to the person and at the address provided for in the Contract, within five (5) days of the mailing of the notice to the Principal.

PROVIDED, FURTHER, that any suit under this bond must be instituted before the expiration of one (1) year after the acceptance of the public works covered by the Contract by the proper authorities.

PROVIDED, FURTHER, that Principal and Surety agree and represent that this bond is executed pursuant to and in accordance with the applicable provisions of the Official Code of Georgia Annotated, as Amended, including, but not limited to, O.C.G.A. 13-10-1, et seq. and 36-86-101, et seq., and is intended to be and shall be construed as a bond in compliance with the requirements thereof.

Exhibit B

Page 3
Bid 18-71-3150

PAYMENT BOND

Signed, sealed, and dated this 27th day of September A.D., 2018.

ATTEST:

_____
(Principal Secretary)

Solidscapes, LLC
_____
(Principal),

By: _____
Jacob Trites, Managing Member

(SEAL)

NINA GOSNELL
NOTARY PUBLIC
Stephens County
State of Georgia
My Comm. Expires June 12, 2020

_____
(Witness as to Principal)

326 Bartson Street, Lavonia, GA 30553
_____
(Address)

326 Bartson Street, Lavonia, GA 30553
_____
(Address)

United States Surety Company
_____
(Surety)

ATTEST:

By: _____
(Attorney-in-Fact and Resident Agent)

_____
(Attorney-in-Fact) Emily Golecki      GA Licensed Agent

(SEAL)

_____
(Witness as to Surety) Maria Zayas

31 Park Commerce Way Suite 500 Savannah, GA 31405
_____
(Address)

31 Park Commerce Way Suite 500 Savannah, GA 31405
_____
(Address)

_____

NOTE: Date of Bond must not be prior to date of Contract. If Contractor is Partnership, all partners should execute Bond.

IMPORTANT: Surety companies executing Bonds must appear on the Treasury Department's most current list (Circular 570 as amended) and be authorized to transact business in the State where the project is located.

Exhibit B


**TOKIO MARINE**
**HCC**

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That, UNITED STATES SURETY COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Maryland, and having its principal office in Timonium, Maryland, does by these presents make, constitute and appoint,

# EMILY GOLECKI

its true and lawful Attorney-in-fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver bond number 100407007 , issued in the course of its business and to bind the Company thereby, in an amount not to exceed Twenty-five million and 00/100 ( $25,000,000.00 ). Said appointment is made under and by authority of the following resolutions of the Board of Directors of United States Surety Company:

"*Be it Resolved*, that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:

*Attorney-in-Fact* may be given full power and authority for and in the name of and on behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements or indemnity and other conditional or obligatory undertakings, including any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts, and any and all notices and documents canceling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-in-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.

*Be it Resolved*, that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile, and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached." Adopted by unanimous written consent in lieu of meeting on September 1st, 2011.

The Attorney-in-Fact named above may be an agent or a broker of the Company. The granting of this Power of Attorney is specific to this bond and does not indicate whether the Attorney-in-Fact is or is not an appointed agent of the Company.

IN WITNESS WHEREOF, United States Surety Company has caused its seal to be affixed hereto and executed by its Senior Vice President on this 1st day of June, 2018.

State of California

County of Los Angeles

By: _____
Adam S. Pessin, Senior Vice President

UNITED STATES SURETY COMPANY

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

On this 1st day of June, 2018, before me, Sonia O. Carrejo, a notary public, personally appeared Adam S. Pessin, Senior Vice President of United States Surety Company, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (seal)

SONIA O. CARREJO
Notary Public—California
Los Angeles County
Commission # 2238479
My Comm. Expires Apr 23, 2022

I, Kio Lo, Assistant Secretary of United States Surety Company, do hereby certify that the Power of Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereof and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand this 27th day of September, 2018.

Bond No. 100407007

Agency No. 11680

_____
Kio Lo, Assistant Secretary

HCCSZZPOAUSSC06/2018

visit tmhcc.com/surety for more information

Exhibit B



**TOKIO MARINE**
**HCC**

Tokio Marine HCC - Surety Group
801 South Figueroa Street, Suite 700
Los Angeles, CA 90017 USA
Tel: 310-649-0990   Fax: 310-649-0891

**VIA U.S. MAIL & EMAIL (solidscapesga@gmail.com)**

October 4, 2019

Solidscapes, LLC
P.O. Box 713
Lavonia, GA 30553

Jacob Trites
151 Lake View Drive
Lavonia, GA 30553

Re:  Principal:           **Solidscapes, LLC**
     Obligee:            **Forsyth County Board of Commissioners**
     Bond No.:           **100407007**
     Claim No.:          **AC 59286-1**
     Project:            **Sanders Road Sidewalk Installation**

Dear Principal and Indemnitors:

United States Surety Company ("USSC") issued payment and performance bonds number 100407007 to Solidscapes, LLC, as Principal.

Forsyth County Broad of Commissioners ("County") notified USSC that the time provided for completion in the contract has expired and that Solidscapes is incurring daily liquidated damages. As a result of this notice, USSC opened a claim against the performance bond and is monitoring the project through completion.

We remind you that as inducement for USSC to issue surety credit, Solidscapes, as principal and corporate indemnitor, and Jacob Trites, as individual indemnitor, each executed the enclosed General Indemnity Agreement wherein, among other things, they agreed to:

"...jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond..."

The responsibility to remedy the delay, successfully complete the project and take whatever action is necessary to protect the bond is therefore yours. *Please provide the most recent schedule and project accounting to assist ACIC in review of this matter.*

If you dispute any of the Obligee's position, it is your responsibility to timely provide the surety with an explanation of and documentation for the dispute.

A member of the Tokio Marine HCC group of companies

Exhibit C

October 4, 2019
Page 2

If we incur any liabilities, losses, costs, damages, attorneys' fees or any other expenses in connection with these claims, each of you individually and as a firm will be liable to ACIC for all amounts. We reserve all rights and defenses under the General Indemnity Agreement, the bond, the law or otherwise.

Sincerely,

AMY PASCALIDE, Bond Claims Attorney
On behalf of United States Surety Company
Tokio Marine HCC – Surety Group
Direct Line (310) 957-3187
Email: apascalide@tmhcc.com

Enclosures:     GIA

cc: HOBO (Email only)

Exhibit C



TOKIO MARINE
HCC

Tokio Marine HCC - Surety Group
801 South Figueroa Street, Suite 700
Los Angeles, CA 90017 USA
Tel: 310-649-0990

**VIA U.S. MAIL & EMAIL (solidscapesga@gmail.com)**

July 28, 2020

Solidscapes, LLC
P.O. Box 713
Lavonia, GA 30553

Jacob Trites
151 Lake View Drive
Lavonia, GA 30553

Re:    **Principal:**       **Solidscapes, LLC**
       **Obligee:**        **Forsyth County Board of Commissioners**
       **Bond No.:**       **100407007**
       **Claim No.:**      **AC 59286-1**
       **Project:**        **Sanders Road Sidewalk Installation**

Dear Mr. Trites:

Please recall United States Surety Company ("USSC") issued payment and performance bonds for the above-referenced project to Solidscapes, LLC, as Principal. As you are aware from our prior letter, dated October 4, 2019, USSC has received claims against both the payment and performance bonds resulting in losses and potential additional liabilities.

As stated in our letter of October 4, 2019, Solidscapes, as principal and corporate indemnitor, and Jacob Trites, as individual indemnitor, each executed the enclosed General Indemnity Agreement (GIA) wherein, among other things, they agreed to:

"...jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond..."

Additionally, Solidscapes and you, individually, agreed that "if an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion."

To date, USSC has validated and paid three payment bond claims, totaling $21,425.70. Copies of each claim check and release is enclosed herewith. Based on those payments, and the language of the GIA, USSC hereby requests reimbursement from Solidscapes and you, individually, in the amount of $21,425.70. Payment may be sent to my attention at USSC, 801 S. Figueroa Street, Suite 700, Los Angeles, CA 90017.

USSC is also currently investigating a claim against the Performance Bond made by the Forsyth County Board of Commissioners. After the termination, by the County, of Solidscapes, the County re-procured the project, with a low bid received in the amount of $393,185. After a reduction for the remaining contract balance in the amount of $178,594.11, the County is seeking $214,590.89 from USSC. As part of

A member of the Tokio Marine HCC group of companies

Exhibit C

July 28, 2020
Page 2

USSC's investigation of the Performance Bond claim, it has incurred, and continues to incur, costs, fees and expenses in connection with the retention of a construction consultant and a local attorney.

In light of the above, pursuant to Section X of the GIA, and in addition to the aforementioned request for reimbursement in the amount of $21,425.70, USSC requests Solidscapes and you, individually, deposit $265,000 in cash collateral. Such deposit should be made within thirty (30) days of the date of this letter, with the deposit sent to the attention of the collateral department at USSC, 801 S. Figueroa Street, Suite 700, Los Angeles, CA 90017.

Should you have any questions regarding the above, please do not hesitate to contact me. USSC reserves all rights under the bonds, the GIA, the law or otherwise.

Sincerely,

PATRICK LAVERTY, Vice President, Bond Claims
On behalf of United States Surety Company
Tokio Marine HCC – Surety Group
Direct Line (213) 330-1341
Email: plaverty@tmhcc.com

Enclosures:     GIA
                Claim documents

cc: DeWitte Thompson, Esq. (Email only)

Exhibit C

# TOKIO MARINE HCC – SURETY GROUP

**General Indemnity Agreement**

THIS GENERAL INDEMNITY AGREEMENT (hereinafter, the "Agreement") is made and entered into this ___1_6_ day of __January__ , __2018__ by and among the Principal (as hereinafter defined):
**SOLIDSCAPES, LLC**

(Insert full name of the Principal(s))

and Indemnitor (as hereinafter defined):
**JACOB TRITES**

(Insert full name of the Indemnitor(s), if any)

jointly and severally, and is executed for the continuing benefit of the Surety (as hereinafter defined).

NOW THEREFORE, in consideration of the premises set forth herein and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged by the Principal(s) and Indemnitor(s), the Principal(s) and Indemnitor(s), for themselves and their successors and assigns, hereby covenant and agree as follows:

## I. DEFINITIONS

The terms listed below shall have the following meanings for purposes of this Agreement:

A. "Bond" or "Bonds" shall mean any contractual obligation, undertaking, contract of suretyship, guaranty or indemnity undertaken by the Surety, issued on behalf of or procured for any Principal by the Surety before, on, or after the date of this Agreement and any renewal, modification, extension or substitution of such obligation, undertaking, contract of suretyship, guaranty or indemnity.

B. "Contract" shall mean any agreement between or among any Principal and any one or more parties other than the Surety, together with all associated documents, including but not limited to general and special conditions, specifications, drawings, schedules and/or CPMs, whether or not the Surety has examined or procured the execution of any Bond in connection therewith.

C. "Bonded Contract" shall mean any Contract in connection with which Surety has issued or procured a Bond.

D. "Event of Default" shall mean any one or more of the following:

1. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal to perform any Contract, or any obligation contained therein;

2. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal to perform any obligation contained in any Bond, or to perform or comply with any and all of the terms, covenants, and conditions of this Agreement;

3. Any actual or alleged abandonment, forfeiture, breach, failure, refusal or inability of any Principal or Indemnitor to perform any contract or agreement, other than this Agreement, to which the Surety and any Principal or Indemnitor shall be parties, including but not limited to, any security agreement, mortgage, deed of trust or other document or instrument delivered to the Surety for the purpose of providing collateral security of the obligations hereunder, or the non-renewal or failure to honor, by any Issuer or bank, any letter of credit provided to or for the benefit of the Surety;

4. The declaration by any obligee or project owner that any Principal is in default under any Contract, irrespective of whether or not such Principal is actually in default under such Contract, or the acknowledgement by such Principal of its default under such Contract;

5. Any delay, failure, refusal or inability of any Principal to pay claims, bills or any other indebtedness incurred in, or in connection with, the performance of any Contract, in whole or in part, when such obligations come due;

6. The payment by the Surety of any claim under any Bond;

7. Any suit or other judicial or quasi-judicial proceeding, including arbitration, or other form of alternative dispute resolution, being commenced against the Surety as it relates to any Bond, Contract, Principal, or Indemnitor;

8. Any failure or refusal by any Principal or Indemnitor to perform any obligation under any provision or term of this Agreement.

9. Any failure by any Principal or Indemnitor to pay or discharge, when due as demanded by the Surety, any indebtedness of any Principal to the Surety or to any obligee, or to any subcontractor, supplier, laborer or materialman or any other claimant on any Bonded Contract or under any Bond;

10. Receipt of any information by the Surety or the existence of any facts relating to the financial condition of any Principal or Indemnitor which causes the Surety, in its sole and absolute discretion, to believe that such Principal or Indemnitor may be unable to perform or meet any of their obligations under this Agreement;

11. Any failure by any Principal to notify the Surety, in writing, within five (5) days of such Principal's receipt of a claim, cure, show cause or other notice from any obligee relating to any Bond or any Bonded Contract;

12. Any failure by any Principal to notify the Surety, in writing, within ten (10) calendar days, of any increase(s) in the dollar amount or value of any Bonded Contract by more than twenty five percent (25%);

13. The making of any untrue, inaccurate, misleading, or incomplete representation or warranty by any Principal or Indemnitor to the Surety or Surety's agent/broker including, without limitation, any representation as to the financial condition of any Principal or Indemnitor;

14. Any diversion of any contract funds by any Principal from any Bonded Contract to make payment of obligations on any other Contract or any other obligations, prior to obtaining the complete discharge of the Surety on the Bonded Contract from which funds have been diverted;

15. Any pledge or assignment by the Principal of any contract balance or contract receivable from a Bonded Contract to a third party, including a lender or factor, without the prior express written authority of the Surety;

16. The insolvency of any Principal or Indemnitor; the commencement of any insolvency, bankruptcy, receivership, trusteeship or other such proceeding of which any Principal or Indemnitor becomes a subject; or any assignment for the benefit of creditors by any Principal or Indemnitor;

17. Any individual Principal's or Indemnitor's death, adjudication of mental incompetence or disability, conviction of a felony, becoming a fugitive from justice or inability to be located after reasonable efforts;

All Principals and Indemnitors must initial below in certification that this page is part of this Agreement and was at the time of signing.

Exhibit C

18. Any material change in the character, identity, composition, beneficial ownership or legal status or existence of any Principal or Indemnitor who is not a natural person, it being understood that a change in five percent (5%) or more of the ownership or controlling interests in any such entity shall be deemed a material change;

19. The establishment by the Surety, in its sole and absolute discretion, of any reserve in any amount in connection with any Bond;

20. The failure of any Principal or Indemnitor to pay any premium, including, but not limited to, additional premiums based on an overrun or increase in contract price, to the Surety or to any agent of the Surety, when due or as demanded thereafter by the Surety;

21. In the event that any Principal or Indemnitor provides or pledges any property of any type to the Surety as collateral security for, or as a condition precedent to the issuance of Bonds, a deadline or deterioration in the value of such property equal to or exceeding twenty percent (20%), as determined by the Surety in its sole and absolute discretion.

E. "Indemnitor" shall mean and include any and all Principal(s), as hereinafter defined, and each and every person or entity who executes this Agreement as an Indemnitor, together with his/her/its successors and assigns.

F. "Principal" shall mean any and all individuals or entities executing this Agreement as a Principal, together with his/her/its successors and assigns. In the event that Surety is requested to and does issue a Bond that names an Indemnitor (other than one who has executed this Agreement as a Principal) as the bond principal, then such Indemnitor shall also be deemed a Principal for all purposes under this Agreement.

G. "Surety" shall mean American Contractors Indemnity Company, U.S. Specialty Insurance Company, United States Surety Company, Texas Bonding Company, HCC Insurance Holdings, Inc., ToKlo Marine HCC – Surety Group, their affiliates, divisions, subsidiaries, successors, assigns, co-sureties, reinsurers, Fronters, partners and/or joint venturers; and any other person or entity which the Surety may direct, request or procure to act as the Surety or as a Co-Surety on any Bond; and any other person or entity who executes a Bond at the request of the Surety.

## II. INDEMNITOR REPRESENTATIONS AND ADDITIONAL CONSIDERATION

Each Indemnitor represents, warrants and guarantees, unconditionally and with the intention that the Surety shall rely upon such representations without investigation or verification, as follows:

A. The Indemnitor has read this Agreement carefully, has consulted with an attorney regarding this Agreement or has had an opportunity to consult with an attorney regarding this Agreement and has elected not to do so; and the Indemnitor understands this Agreement and that the Indemnitor is bound to the terms of this Agreement;

B. This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement. This Agreement is made and entered into as a result of negotiations in a free and active market in which the Indemnitor has and has had alternatives;

C. The Indemnitor intends: (i) that the Surety shall rely upon the Indemnitor's credit, including all of the Indemnitor's assets; (ii) that the Surety shall undertake legal or financial risk or forego rights or remedies that might otherwise be available to the Surety based upon such reliance; and (iii) that such reliance is reasonable;

D. The Indemnitor has a substantial, material and beneficial interest in: (i) obtaining one or more Bonds on behalf of the Principal; (ii) the Surety's forbearance from canceling one or more Bonds; and/or (iii) the performance and fulfillment of the obligations secured or to be secured by one or more Bonds; and

E. The Indemnitor's undertakings by and through this Agreement are given in consideration of the issuance (whether in the past, contemporaneously with the execution of this Agreement, or in the future) by the Surety of one or more Bonds and/or the Surety refraining from cancelling one or more Bonds.

## III. INDEMNITY, EXONERATION AND HOLD HARMLESS

The Principals and Indemnitors shall, jointly and severally, exonerate, indemnify, reimburse, and save and hold the Surety harmless from and against any and all demands, liabilities, losses, costs, damages, expenses and fees (including, but not limited to, those incurred by or in connection with accountants, attorneys, consultants, engineers, investigation, and other professionals), interest, court costs, and any and all other types of losses, costs or expenses of whatsoever kind or nature, which the Surety may sustain or incur or which arise by reason of or in any manner in consequence of any one or more of the following: (i) the execution or procurement by the Surety of any Bond; (ii) the failure of any Principal or Indemnitor to perform or comply with any provision of this Agreement; (iii) the enforcement of any provision of this Agreement; (iv) the conduct of any investigation regarding the Surety's alleged obligations or liabilities under any Bond or in connection with any Contract; (v) any attempt by or on behalf of the Surety to obtain a release or reduction of the Surety's liability or alleged liability under any Bond or Contract; (vi) any attempt by or on behalf of the Surety to recover any unpaid premium in connection with any Bond; (vii) the prosecution or defense of any action or claim in connection with any Bond or Contract; (viii) the loan or advance of any monies to any Principal or Indemnitor; or (ix) the Surety's attempt to determine, discharge or mitigate its loss or exposure to loss in connection with any Bond or Contract, or to enforce any of its rights pursuant to this Agreement, by suit or otherwise. The obligations provided for in this paragraph are without regard to whether the Surety, in its sole and absolute discretion, elects to employ its own counsel or, in lieu thereof or in addition thereto, permits or requires any Principal and/or Indemnitor to make arrangements for or assist in the Surety's legal representation and protection.

The Principals and Indemnitors further agree that they shall be liable for, and that the Surety shall be entitled to charge and recover for, any and all payments made by the Surety in the good faith belief that (1) any Principal or Indemnitor is or has been in default under this Agreement; (2) the Surety was or might be liable for a claim asserted against a Bond, whether or not such liability actually existed; or (3) such payments were or are necessary or expedient to protect any of the Surety's rights or interests or to avoid or lessen the Surety's actual or alleged liability. The Surety shall be entitled to the rights and remedies set forth in this Section III and to all of the benefits of this Agreement with respect to any liability, payment, loss or cost that is incurred or made by the Surety in good faith. The foregoing obligations shall extend to and include an obligation to pay to the Surety interest on any payments made by the Surety as a result of having issued any Bond, at the rate of ten percent (10%) per annum or the maximum rate allowed by law, whichever is lower, calculated from the date such payment is made by the Surety.

## IV. ASSIGNMENT

A. As security for performance of all of the provisions of this Agreement, effective as of the date of this Agreement, the Principals and Indemnitors hereby assign, transfer, pledge, and convey to the Surety all of their right, title, and interest and estate in and to all real and personal property which they now own or hereafter acquire, including all income and receipts therefrom and increases and appreciation thereon, including, but not limited to:

All Principals and Indemnitors must initial below accordingly so that this page is part of this Agreement and was at the time of signing

- 2 -

Exhibit C

1. All right, title and interest in, to or arising in any manner out of any Contract or Bonded Contract, including the right to receive progress payments, payments or claims, changes or allowances, retained sums or any and all other monies due or to become due deriving in any manner from any Contract or Bonded Contract;
2. All equipment, machinery, plant, tools, inventory, or materials which are now or may thereinafter be ordered, stored or utilized in connection with any Contract or Bonded Contract, whether or not any such materials are located at a construction site, in storage, in transit or elsewhere;
3. All right, title and interest in, to, and arising out of all subcontracts or purchase orders let or entered into in connection with any Contract or Bonded Contract, including any and all surety bonds, guarantees or other undertakings supporting such subcontracts or purchase orders;
4. Any and all rights arising out of, or monies due or to become due in connection with, any and all annuities, insurance policies, accounts receivables, and notes, and any claims and court actions of any kind;
5. Any and all undisbursed loan funds, deposit accounts, or interest reserve accounts.

B. The assignments set forth in this Section IV are in addition to, and shall not in any way impair, any rights of subrogation which the Surety has or may have.

### V. UNIFORM COMMERCIAL CODE

With respect to the assignments set forth in Section IV of this Agreement, this Agreement constitutes a Security Agreement and Financing Statement for the benefit of the Surety, both in accordance with the provisions of the Uniform Commercial Code or similar statute of every jurisdiction in which such Code or statute is in effect. This Agreement may be so used by the Surety without in any way abrogating, restricting or limiting its rights under this or any other Agreement between or among the Surety and any Principal or Indemnitor. A copy of this Agreement shall be sufficient for the purposes mentioned in this Section. The Surety may add schedules to this Agreement which describe more specifically items of security covered by this Assignment. The Indemnitor acknowledges and agrees that the Surety's disposition or settlement of a claim against a Bond will conclusively be deemed to have been commercially reasonable so long as the settlement of the claim is otherwise in accordance with the standards set forth in this Agreement or otherwise as required by applicable law.

### VI. ATTORNEY IN FACT

The Principals and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to the Surety in this Agreement. In the name of any Principal or Indemnitor, the Surety may make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect to the intent and meaning of the within assignments and under all other provisions of this Agreement. The Principals and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact. Without limiting the generality of the foregoing, the Principals and Indemnitors expressly agree and recognize that the powers given to the Surety as attorney-in-fact include the powers and authority to execute any and all documents (including, but not limited to, deeds of trust, mortgages, checks, stock certificates, and bonds) and to take any and all actions that the Surety may deem necessary in order to liquidate or acquire any real or personal property assigned, transferred to, or acquired by the Surety as security, indemnity, or reimbursement in connection with the obligations under this Agreement.

### VII. TRUST FUNDS

All funds received by any Principal or Indemnitor, or which are or become due under any Bonded Contract (regardless of who has possession of such funds), are trust funds in which the Surety has an interest, and which the Principal and Indemnitor pledge for the benefit of and payment to the Surety as reimbursement to the Surety for any actual or potential liability, loss, cost or expense the Surety may sustain or incur under any Bond or which is otherwise recoverable under this Agreement. If the Surety discharges any obligation to a claimant under a Bond, it shall be entitled to assert the claims of such claimant to the trust funds. Any Principal or Indemnitor shall, upon demand of the Surety, deposit or cause to be deposited said trust funds either in an account or accounts to be held or maintained by the Surety and/or in one or more accounts with a bank, third party contract escrow agent or similar depository approved by the Surety. Withdrawal(s) from any such account(s) shall be signed, executed, or otherwise approved in writing by an authorized representative of the Surety, including, but not limited to, a third-party escrow agent. Said trust or trusts shall terminate on the payment by the Principal and Indemnitor of all of the obligations for the payment of which the trust or trusts are created or upon the expiration of twenty (20) years from the date hereof, whichever occurs first.

### VIII. SETTLEMENTS

The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise, litigate, protest, or appeal any claim, demand, suit, award, assessment or judgment on or in connection with any Bond, Bonded Contract, or Contract. If, however, any Principal or Indemnitor desires that the Surety consider adjusting, settling, prosecuting, defending, compromising, litigating, protesting, or appealing, any claim, demand, suit, award, assessment, or judgment against any Principal or the Surety, such Principal or Indemnitor shall:

A. Give written notice to the Surety to this effect by certified or registered mail; and

B. Simultaneously therewith, deposit with the Surety cash, securities or other collateral, in form and amount acceptable to the Surety in its sole and absolute discretion, to completely cover the Surety's exposure or perceived exposure to any loss, cost or expense for which the Surety is entitled to exoneration, indemnification or reimbursement pursuant to this Agreement. The Surety shall be entitled to utilize counsel of its own choice in prosecuting, defending, resisting, litigating or appealing any such claim, demand, suit, award or judgment, or in appealing from any judgment, award or assessment, whether or not any Principal or Indemnitor also provides its own counsel, and all associated costs and expenses shall be recoverable by the Surety pursuant to this Agreement.

Performance of both sub-Section A and B of this Section VIII shall be an absolute condition precedent to the right of a Principal or Indemnitor to challenge the Surety's good faith with respect to settlement of any claims asserted against the Surety. Performance of both sub-Sections A and B of this Section IX shall not, however, in any way diminish the right of the Surety to compromise, settle, pay, or otherwise discharge any claim, demand, suit, award or judgment in its sole and absolute discretion, subject only to its obligation of good faith as provided herein.

All Principals and Indemnitors must initial below in certification that this page is part of this Agreement and was at the time of signing.

[initials]

Exhibit C

In the event of any payment by the Surety, an itemized, sworn statement of the amount of any such payment, invoice(s) or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment and, in the absence of actual fraud, shall be final, conclusive and binding upon any Principal or Indemnitor in any claim, suit or other proceeding by the Surety.

X. DEPOSIT WITH SURETY

A. If an Event of Default occurs, or if a claim is made against the Surety under any Bond, the Principals and Indemnitors shall, on demand from the Surety, immediately deposit with the Surety collateral in any amount, value or form as the Surety may designate in its sole and absolute discretion. Such collateral shall be held by the Surety as collateral security in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with the Surety or any other benefits and protections afforded to the Surety by this Agreement or any other agreement.

B. The Surety shall have the right, at any time and without notice or legal process, to: (1) deposit, invest, convert, cash, exchange, renew, sell or otherwise dispose of such collateral or the proceeds thereof in any manner, in such form and on such terms as it deems proper; (2) use such collateral, or any part thereof, at any time, in payment or compromise of any premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement, or to reimburse itself in the event that the Surety shall have paid or subsequently pays any such premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursements or any other costs recoverable by the Surety pursuant to this Agreement. However, the Surety shall have no obligation to invest or to provide a return on any collateral security deposited pursuant to this Section X.

C. In the event of a sale or other transfer or liquidation of any collateral, the Surety shall be liable or accountable to the Principals and Indemnitors only for surplus funds realized after all obligations to the Surety pursuant to this Agreement or otherwise have been met.

D. The Surety shall not be liable to any Principal or Indemnitor for any actions taken by the Surety pursuant to this Section X under the good faith belief that it was liable or potentially liable for any payment made, whether or not such liability actually exists or existed. The Surety shall not be liable to any Principal or Indemnitor for any diminution in value, loss, damage or destruction of or to collateral held by the Surety, no matter how such diminution in value, loss, damage or destruction may occur.

E. The Principals and Indemnitors recognize, acknowledge and agree that the amount of any collateral demand made under this Section X shall be deemed a liquidated amount, immediately due and owing upon demand.

F. The Principals and Indemnitors shall be entitled to a refund of any unused portion of any collateral security deposited pursuant to this Section X upon termination of the Surety's liability on all Bonds and the performance by the Principals and Indemnitors of all obligations to the Surety pursuant to this Agreement.

XI. TAKEOVER

Upon the occurrence of an Event of Default, the Surety shall have the right, but not the obligation, in its sole and absolute discretion, and is hereby authorized to take possession of any part or all of the work under any Bonded Contract and, at the cost and expense of the Principals and Indemnitors, to complete or to arrange for the completion of such Bonded Contract. If the Surety elects to take possession as provided in this Section, (1) the Principals and Indemnitors shall promptly, upon demand, pay to the Surety all costs, losses and expenses incurred by the Surety or otherwise recoverable pursuant to any of the provisions of this Agreement, and (2) the Surety shall have the right, but not the obligation, to take possession of the Principals' equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for the completion of any Bonded Contract.

XII. ADVANCES

The Surety, in its sole and absolute discretion, is authorized and empowered, but not required, to guaranty loans or to advance or lend to or for the account of the Principals any money which the Surety may see fit, in connection with any Bonded Contract. Any such payments made or obligations incurred by the Surety (including any and all related costs and expenses) shall be conclusively deemed to be a loss to the Surety for which the Principals and Indemnitors shall be liable under this Agreement. If the Surety makes any advances or loans pursuant to this Section, it will not be obligated to monitor or ensure any particular application of the proceeds thereof, and the obligations of the Principals and Indemnitors under this Agreement shall not be affected by the fact that some or all of the proceeds thereof may not have been utilized as intended. The Surety retains the absolute right, in its sole and absolute discretion, with or without cause and with or without notice, to cancel any guaranty or to cease advancing or lending money to or for the account of the Principals.

XIII. BOOKS, RECORDS AND INFORMATION

The Principals and Indemnitors shall furnish to the Surety such information as the Surety may request from time to time concerning the following: (1) the financial condition of the Principals and Indemnitors; (2) the status of work under any Contract; (3) the condition or status of the performance of any Contract; (4) the payment of any obligations incurred in connection with any Contract; and (5) the status of claims or entitlements of any Principal in connection with any Contract, or in connection with any subcontract, supply or service accounts such Principal may have with third parties in connection with any Contract. Until the Surety's liability under all Bonds is terminated, the Surety shall have the right to access all of the books, records and accounts of the Principals and Indemnitors, wherever located, at any reasonable time, and upon reasonable notice. The Surety shall have access to any information and documents maintained on behalf of or in connection with the Principals and Indemnitors: (1) at any banks or depositories; (2) with any obligee on any Bond; and (3) by certified public accountants (or other accountants), credit reporting agencies, materialmen, supply houses or any other persons, firms, or corporations doing business with the Principals and/or Indemnitors, and all of the foregoing entities are hereby expressly authorized to furnish to the Surety any information requested by it. The Principals and Indemnitors hereby further authorize the Surety, through its representatives, to visit job sites and projects described in any Contract, to obtain access to all job records and personnel or any owners or obligees to determine the status of work on any Contract, and to obtain any and all other information and documents deemed necessary in the Surety's sole and absolute discretion for the protection of its interests. Presentation of this Agreement shall constitute the Principals' and Indemnitors' consent to the release of all such information and an express waiver of any and all applicable privileges. The Surety's entitlement to such information is not dependent on the occurrence of an Event of Default.

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

- 4 -

Exhibit C

the failure or refusal of any person or entity to award any contract to any Principal or Indemnitor or to accept any Bond executed and delivered by the Surety or that the Surety has been requested to execute and deliver

C. The Principals and Indemnitors shall pay when due to the Surety all premiums and charges of the Surety and/or as agent/broker for any Bond in accordance with the Surety's rate filings and manual of rates, or as otherwise may be agreed.

D. The Principals and Indemnitors agree that there have been no oral or other agreements of any kind as a condition precedent or to induce the execution and delivery of this Agreement by any party.

E. The Surety has no obligation, and may, in its sole and absolute discretion, decline, to issue or to execute any Bond requested or applied for. The execution by the Surety of a bid or proposal Bond, or consent of surety, or any similar undertaking shall not obligate the Surety to issue or execute any final or other Bond that may be required in connection with any award that may be made under the proposal for which the bid or proposal Bond, or consent of surety, is given.

F. Delivery of this Agreement by any Principal or Indemnitor to the Surety and reliance by the Surety on the representations and promises set forth in this Agreement shall be conclusively presumed from the possession by the Surety or the Surety's agent/broker of a signed original or copy of this Agreement.

G. Absent express written agreement to the contrary, the liability of the Principals and Indemnitors under this Agreement shall be unaffected by any other agreement between any, some or all of the parties to this Agreement relating to the same subject matter.

H. The rights granted herein are in addition to, and shall not be deemed a waiver of, the Surety's equitable subrogation or any other rights under law or in equity.

I. Any and all other rights which the Surety may have or acquire against the Principals and Indemnitors or others under any other or additional agreements shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.

J. This Agreement sets forth executory undertakings of the Principals and Indemnitors only; there are no enforceable promises made by the Surety in this Agreement. The Principals and Indemnitors acknowledge that the Surety shall not be required to sign this Agreement; however, if the Surety acknowledges or accepts this Agreement in writing, such written acknowledgment or acceptance shall constitute a part of this Agreement.

K. Any right that any Principal or Indemnitor has against any other Principal or Indemnitor for indemnity or contribution is subordinate to the Surety's rights under this Agreement.

L. In the event that the Surety (1) procures the execution of any Bond by any other surety or sureties, (2) executes any Bond with co-sureties, or (3) reinsures any portion of any Bond with reinsuring sureties, then the provisions of this Agreement shall also inure to the benefit of such other sureties, co-sureties and reinsuring sureties to the extent of their interests.

M. The Indemnitors shall, at all times, remain familiar with the financial condition and operations of the Principals and the status of all Contracts.

N. The Principals and Indemnitors will, at any time upon the request of the Surety, procure the discharge or release of the Surety from any Bond and from any and all liability by reason thereof. The Surety may, at any time, take such actions as it deems necessary or proper to obtain its release from any and all liability under any Bond.

O. The Surety's exercise of, or failure to exercise, any right, remedy, power or entitlement under this Agreement or any other agreement between any or all of the parties shall not be deemed to be an election of remedy, estoppel or a waiver of any other right, remedy, power or entitlement. The Surety is not required to exhaust any remedy or right against any Principal or Indemnitor before asserting its rights against any other Principal or Indemnitor. The Surety is not required to pursue its rights against any collateral it may hold before asserting its rights under this Agreement. The Principals and Indemnitors hereby waive any defense that this Agreement was executed subsequent to the date of any Bond.

P. This Agreement is binding on any Principal or Indemnitor who signs it even if: (1) other identified Principals or Indemnitors fail to sign it; or (2) the execution by any Principal or Indemnitor is defective or invalid for any reason.

Q. This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety and shall be construed to provide the most extensive protection possible to the Surety within any limits imposed by applicable law. If any provision of this Agreement cannot be reasonably construed in such a way as to be enforceable under applicable law, then such provision or term shall be deemed to be excised from this Agreement, and this Agreement shall be enforced as though such provision had never been a part hereof.

R. This Agreement may not be altered or modified orally. No change or modification shall be valid unless made by written endorsement, executed by an officer of the Surety and all of the Principals and Indemnitors. No agent/broker of the Surety shall have the right to alter the termination or any other provisions of this Agreement, and no Principal or Indemnitor may rely upon any oral or written representations by any such alleged agent/broker of the Surety and must strictly adhere to the provisions hereof in order to terminate this Agreement.

S. All written notices to the Surety pursuant to this Agreement must be sent by registered or certified mail, return receipt requested, to the Surety at 20 West Aylesbury Road, Timonium, Maryland 21093.

T. Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa. The Section headings herein are included for convenience only and shall not be deemed to be part of this agreement.

IN WITNESS WHEREOF, the Principal and Indemnitor hereby execute this Agreement under seal.

Exhibit C

INDIVIDUAL PRINCIPALS OR INDEMNITORS

**JACOB TRITES**
Printed Individual Principal/Indemnitor Name
151 LAKE VIEW DRIVE, LAVONIA, GA 30553
Address

Witness and Notary Acknowledgment

STATE OF Georgia
COUNTY OF Franklin
On this 17 day of Jun 2018, before me, a Notary Public of the State of GEORGIA
JACOB TRITES, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

Notary Public    My Commission Expires: 6 · 7 · 21

Individual Principal/Indemnitor

Printed Individual Principal/Indemnitor Name    Signature

Address    Witness Signature

Witness and Notary Acknowledgment

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20__, before me, a Notary Public of the State of _____, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

Notary Public    My Commission Expires: _____

Individual Principal/Indemnitor

Printed Individual Principal/Indemnitor Name    Signature    Initials

Address    Witness Signature

Witness and Notary Acknowledgment

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20__, before me, a Notary Public of the State of _____, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

Notary Public    My Commission Expires: _____

Individual Principal/Indemnitor

Printed Individual Principal/Indemnitor Name    Signature    Initials

Address    Witness Signature

Witness and Notary Acknowledgment

STATE OF _____
COUNTY OF _____
On this _____ day of _____ 20__, before me, a Notary Public of the State of _____, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same.

IN WITNESS THEREOF, I set my hand and official seal.

Notary Public    My Commission Expires: _____

All Principals and Indemnitors must (print below as confirmation that this page is part of this Agreement and was at the time of signing.

- 7 -

Exhibit C

CORPORATE/LLC/OTHER PRINCIPALS OR INDEMNITORS

Corporate/LLC/Other Principal/Indemnitor

SOLIDSCAPES, LLC; P.O. BOX 713, LAVONIA, GA 30553     JACOB TRITES, PRESIDENT
_Printed Principal or Indemnitor Name and Address_        _Printed Name and Title of Authorized Signer_

_Authorized Signature_        Initials    Witness Signature

Witness and Notary Acknowledgment

STATE OF Georgia

COUNTY OF Franklin

On his 17 day of Jan 2d 8, before me, a Notary Public of the State of GEORGIA personally appeared JACOB TRITES , known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and, in my presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

_Notary Public_        My Commission Expires: 6·7·21

Corporate/LLC/Other Principal/Indemnitor

_Printed Principal or Indemnitor Name and Address_        _Printed Name_

_Authorized Signature_        Initials    Witness Signature

Witness and Notary Acknowledgment

STATE OF _____

COUNTY OF _____

On this _____ day of _____ 20____, before me, a Notary Public of the State of _____, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

_Notary Public_        My Commission Expires: _____

Corporate/LLC/Other Principal/Indemnitor

_Printed Principal or Indemnitor Name and Address_        _Printed Name and Title of Authorized Signer_

_Authorized Signature_        Initials    Witness Signature

Witness and Notary Acknowledgment

STATE OF _____

COUNTY OF _____

On this _____ day of _____ 20____, before me, a Notary Public of the State of _____, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

_Notary Public_        My Commission Expires: _____

Corporate/LLC/Other Principal/Indemnitor

_Printed Principal or Indemnitor Name and Address_        _Printed Name and Title of Authorized Signer_

_Authorized Signature_        Initials    Witness Signature

Witness and Notary Acknowledgment

STATE OF _____

COUNTY OF _____

On this _____ day of _____ 20____, before me, a Notary Public of the State of _____, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the above instrument and, in my presence, signed the same and acknowledged that he/she executed the same in his/her authorized capacity on behalf of _____.

IN WITNESS THEREOF, I set my hand and official seal.

_Notary Public_        My Commission Expires: _____

All Principals and Indemnitors must initial below as certification that this page is part of this Agreement and was at the time of signing.

Exhibit C

# HCC SURETY GROUP
## BLANKET AUTHORIZATION FORM
### Page 1 of 1

Authority is hereby granted to any Individual, Firm or Corporation and any financial institution to furnish HCC Surety Group upon its request, with any information concerning or pertaining to the undersigned's financial standing, credit or manner of meeting obligations. A copy of this agreement shall be considered the same as the original. This authorization is to remain in force until rescinded by the applicant in writing.

1-16-18

Signature                              Date

JACOB TRITES

Printed Name

▮▮▮▮▮▮▮

Social Security Number

151 LAKE VIEW DRIVE

Home Address (Street)

LAVONIA, GA 30553

City, State, Zip

SOLIDSCAPES, LLC                      1-16-18

Corporation                            Date

President (Jacob Trites)

Sole Ownership

▮▮▮▮▮▮▮

Federal ID Number

P.O. BOX 713

Business Address (Street)

LAVONIA, GA 30553

City, State, Zip

Exhibit C

## SURETY RELEASE AND ASSIGNMENT OF CLAIM

WHEREAS, **SOLIDSCAPES, LLC**, herein called Contractor, has a contract with **FORSYTH COUNTY BOARD OF COMMISSIONERS**, herein called Obligee, for certain work described as follows: **SANDERS ROAD SIDEWALK INSTALLATION** and gave bond number **100407007** to Obligee with **UNITED STATES SURETY COMPANY** as Surety, conditioned for the payment of labor and material claims;

AND WHEREAS, **MARTIN-ROBBINS FENCE CO., INC.** herein called Claimant, furnished labor and/or material to Contractor for use, and which were used, in the prosecution of said work,

AND WHEREAS, Claimant has made claim for an unpaid account of $9,170.00.

NOW THEREFORE, Claimant, in consideration of the sum of **NINE THOUSAND ONE HUNDREDSEVENTY DOLLARS AND 00/100 ($9,170.00)**, to be paid by Surety, has sold and by these presents does sell, assign and set over unto Surety, its successors and assigns, the claim of **NINE THOUSAND ONE HUNDREDSEVENTY DOLLARS AND 00/100 (S9,170.00)** against anyone liable therefore together with all of its rights, title and interest in and to said claim or cause of action; and Claimant constitutes said assignee its true, lawful and irrevocable attorney to demand and enforce payment of said claim, and to sue for the said sum so assigned either in the name of Claimant, or in its own name.

CLAIMANT further agrees that all guarantees and warranties required under the terms of any contract or purchase order pertaining to the Project for labor, materials, or equipment furnished by Claimant to the Project, shall remain in full force and effect in accordance with their terms and may be enforced directly by Surety, its successors and assigns.

CLAIMANT further hereby releases Surety from any liens and all claims and demands of every kind for labor and materials furnished to Contractor under the aforesaid Contract or in any way growing out of or connected with said Contract and the bond given for the payment of labor and material claims.

CLAIMANT understands and acknowledges that Claimant will not be able to make any additional claims on the Project and/or bond. Furthermore, Claimant acknowledges that it intends these consequences even as to unknown claims that may exist as of the date of this release, regardless of the reason for Claimant's lack of knowledge of same.

1

Exhibit C

CLAIMANT further warrants that all billings, accounts and/or amounts due from Claimant and/or its subcontractors or material suppliers for labor, material, or equipment employed in the performance of this contract have been fully paid in accordance with the terms of said contract(s) and that there are no amounts due, all having been fully paid and other terms of the relevant contract having been fully complied with by Claimant.

Signed, sealed and dated this 4th day of December 2019

MARTIN-ROBBINS FENCE CO., INC.

Signature:
By: Thomas A. Martin
Title: President

## ALL-PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Georgia
COUNTY OF Gwinnett

On Dec 4 2019 before me, Kristi Brown, Notary Public personally appeared Thomas A. Martin who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(Signature of Notary Public)
My Commission Expires:
Kristi Brown
Notary Public
Gwinnett County
State of Georgia
My Commission Expires April 1, 2021

2

Exhibit C

UNITED STATES SURETY COMPANY Member of HCC Surety Group
Claims Disbursement Account
Check No: 0000212513                    Check Amount: $9,170.00                    Check Date: 12/5/2019

Vendor ID/Vendor Name: 1180175727/MARTIN-ROBBINS FENCE CO INC

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 59286-3_ 428223 | 100407007 | SOLIDSWPES LL'C | 12/5/2019 | 9,170.00 | Any and All Claims, Full and Final Settlement |

MARTIN-ROBBINS FENCE CO INC
2025 WESTSIDE COURT SNELLVILLE, GA 30078

Stub Total                    $9,170.00

UNITED STATES SURETY COMPANY Member of HCC Surety Group
Claims Disbursement Account
Check No: 0000212513                    Check Amount: $9,170.00                    Check Date: 12/5/2019

Vendor ID/Vendor Name: 1180175727/ MARTIN-ROBBINS FENCE CO INC

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 59286-3_428223 | 100407007 | SOLIDSWPES LLC | 12/5/2019 | 9,170.00 | Any and All Claims, Full and Final Settlement |

Stub Total                    $9,170.00

HCC SERVICE COMPANY, INC. - CHECK IS VOID WITHOUT MICROPRINT ON CHECK BORDER, A TRUE WATERMARK ON BACK AND THERMOCHROMIC INK.

TOKIO MARINE
HCC

UNITED STATES SURETY COMPANY
Member of HCC Surety Group
Claims Disbursement Account
801 SOUTH FIGUEROA STREET SUITE 700
LOS ANGELES, CA 90017

Date        12/5/2019

WELLS FARGO BANK, NA

Check No 0000212513

56-382/412

Void After 180 Days

Amount                    ***$9,170.00

PAY        ****NINE THOUSAND ONE HUNDRED SEVENTY AND XX/100 DOLLARS****

TO
THE
ORDER
OF

MARTIN-ROBBINS FENCE CO INC
2025 WESTSIDE COURT
SNELLVILLE, GA 30078

Sharon L. Brock
Authorized Signature

⑈0000212513⑈ ⑈041203824⑈ 9671451137⑈

Exhibit C

# SURETY RELEASE AND ASSIGNMENT OF CLAIM

WHEREAS, **SOLIDSCAPES, LLC**, herein called Contractor, has a contract with **FORSYTH COUNTY BOARD OF COMMISSIONERS**, herein called Obligee, for certain work described as follows: **SANDERS ROAD SIDEWALK INSTALLATION** and gave bond number **100407007** to Obligee with **UNITED STATES SURETY COMPANY** as Surety, conditioned for the payment of labor and material claims;

AND WHEREAS, **MTM ENTERPRISES, INC.**, herein called Claimant, furnished labor and/or material to Contractor for use, and which were used, in the prosecution of said work,

AND WHEREAS, Claimant has made claim for an unpaid account of $7,162.50.

NOW THEREFORE, Claimant, in consideration of the sum of **SEVEN THOUSAND ONE HUNDRED SIXTY TWO DOLLARS AND 50/100 ($7,162.50)**, to be paid by Surety, has sold and by these presents does sell, assign and set over unto Surety, its successors and assigns, the claim of **SEVEN THOUSAND ONE HUNDRED SIXTY TWO DOLLARS AND 50/100 ($7,162.50)** against anyone liable therefore together with all of its rights, title and interest in and to said claim or cause of action; and Claimant constitutes said assignee its true, lawful and irrevocable attorney to demand and enforce payment of said claim, and to sue for the said sum so assigned either in the name of Claimant, or in its own name.

CLAIMANT further agrees that all guarantees and warranties required under the terms of any contract or purchase order pertaining to the Project for labor, materials, or equipment furnished by Claimant to the Project, shall remain in full force and effect in accordance with their terms and may be enforced directly by Surety, its successors and assigns.

CLAIMANT further hereby releases Surety from any liens and all claims and demands of every kind for labor and materials furnished to Contractor under the aforesaid Contract or in any way growing out of or connected with said Contract and the bond given for the payment of labor and material claims.

CLAIMANT understands and acknowledges that Claimant will not be able to make any additional claims on the Project and/or bond. Furthermore, Claimant acknowledges that it intends these consequences even as to unknown claims that may exist as of the date of this release, regardless of the reason for Claimant's lack of knowledge of same.

Exhibit C

CLAIMANT further warrants that all billings, accounts and/or amounts due from Claimant and/or its subcontractors or material suppliers for labor, material, or equipment employed in the performance of this contract have been fully paid in accordance with the terms of said contract(s) and that there are no amounts due, all having been fully paid and other terms of the relevant contract having been fully complied with by Claimant.

Signed, sealed and dated this 26th day of November 2019

MTM ENTERPRISES, INC.

Signature:
By: MYRON MAKITA
Title: OWNER / PRESIDENT

## ALL-PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Georgia
COUNTY OF Forsyth

On 1-26-19 before me, Leslie J. Fuller, Notary Public personally appeared Myron T. Makita who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Georgia that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(Signature of Notary Public)
My Commission Expires: 3-20-2021

Exhibit C

UNITED STATES SURETY COMPANY Member of HCC Surety Group
Claims Disbursement Account
Check No: 0000212514                          Check Amount: $7,162.50                          Check Date: 12/5/2019

Vendor ID/Vendor Name: 1180175722/MTM ENTERPRISES INC

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 59286-2_428204 | 100407007 | S*OLIOSCRE'S LLC | 12/6/2019 | 7,162.50 | Any and All Claims, Full and Final Settlement |

MTM ENTERPRISES INC
4905 SHADBURN ROAD CUMMING, GA 30041

Stub Total $7,162.50

UNITED STATES SURETY COMPANY Member of HCC Surety Group
Claims Disbursement Account
Check No: 0000212514                          Check Amount: $7,162.50                          Check Date: 12/5/2019

Vendor ID/Vendor Name: 1180175722/ MTM ENTERPRISES INC

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 59286-2_428204 | 100407007 | SOLIOSCAPES LLC | 12/5/2019 | 7,162.50 | Any and All Claims, Full and Final Settlement |

Stub Total $7,162.50

HCC SERVICE COMPANY, INC. - CHECK IS VOID WITHOUT MICROPRINT ON CHECK BORDER & TRUE WATERMARK ON BACK/ AND THERMOCHROMIC INK

TOKIO MARINE
HCC

UNITED STATES SURETY COMPANY
Member of HCC Surety Group
Claims Disbursement Account
801 SOUTH FIGUEROA STREET SUITE 700
LOS ANGELES, CA 90017

Date        12/5/2019

Amount

WELLS FARGO BANK, NA

Check No 0000212514

56-382/412

Void After 180 Days

***$7,162.50

PAY        ****SEVEN THOUSAND ONE HUNDRED SIXTY-TWO AND 50/100 DOLLARS****

TO
THE
ORDER
OF

MTM ENTERPRISES INC
4905 SHADBURN ROAD
CUMMING, GA 30041

Sharon L Brock

Authorized Signature

Sub Data

⑈0000212514⑈ ⑈041203824⑈ 9671451137⑈

Exhibit C

# SURETY RELEASE AND ASSIGNMENT OF CLAIM

WHEREAS, **SOLIDSCAPES, LLC,** herein called Contractor, has a contract with **FORSYTH COUNTY BOARD OF COMMISSIONERS,** herein called Obligee, for certain work described as follows: **SANDERS ROAD SIDEWALK INSTALLATION** and gave bond number **100407007** to Obligee with **UNITED STATES SURETY COMPANY** as Surety, conditioned for the payment of labor and material claims;

AND WHEREAS, **SMYRNA READY MIX CONCRETE, LLC.,** herein called Claimant, furnished labor and/or material to Contractor for use, and which were used, in the prosecution of said work,

AND WHEREAS, Claimant has made claim for an unpaid account of $5,093.20.

NOW THEREFORE, Claimant, in consideration of the sum of **FIVE THOUSAND NINTY THREE DOLLARS AND 20/100 ($5,093.20)**, to be paid by Surety, has sold and by these presents does sell, assign and set over unto Surety, its successors and assigns, the claim of **FIVE THOUSAND NINTY THREE DOLLARS AND 20/100 ($5,093.20)** against anyone liable therefore together with all of its rights, title and interest in and to said claim or cause of action; and Claimant constitutes said assignee its true, lawful and irrevocable attorney to demand and enforce payment of said claim, and to sue for the said sum so assigned either in the name of Claimant, or in its own name.

CLAIMANT further agrees that all guarantees and warranties required under the terms of any contract or purchase order pertaining to the Project for labor, materials, or equipment furnished by Claimant to the Project, shall remain in full force and effect in accordance with their terms and may be enforced directly by Surety, its successors and assigns.

CLAIMANT further hereby releases Surety from any liens and all claims and demands of every kind for labor and materials furnished to Contractor under the aforesaid Contract or in any way growing out of or connected with said Contract and the bond given for the payment of labor and material claims.

CLAIMANT understands and acknowledges that Claimant will not be able to make any additional claims on the Project and/or bond. Furthermore, Claimant acknowledges that it intends these consequences even as to unknown claims that may exist as of the date of this release, regardless of the reason for Claimant's lack of knowledge of same.

1

Exhibit C

CLAIMANT further warrants that all billings, accounts and/or amounts due from Claimant and/or its subcontractors or material suppliers for labor, material, or equipment employed in the performance of this contract have been fully paid in accordance with the terms of said contract(s) and that there are no amounts due, all having been fully paid and other terms of the relevant contract having been fully complied with by Claimant.

Signed, sealed and dated this __7__ day of __January__ 2020

SMYRNA READY MIX CONCRETE, LLC

Signature: ~~Cindy Duttn~~ Credit Manager
By: ~~Cindy Dutton, Credit Manager~~
Title: ~~Credit Manager~~

## ALL-PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _Tennessee_
COUNTY OF _Davidson_

On _01-07-2020_ before me, _Judith E Filer_ , Notary Public personally appeared _Cindy Dutton_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Tennessee_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

~~Judith E Filer~~
(Signature of Notary Public)
My Commission Expires:

JUDITH E FILER
STATE OF
TENNESSEE
NOTARY
PUBLIC
DAVIDSON COUNTY
MY COMMISSION EXPIRES 5-22-2022

2

Exhibit C

UNITED STATES SURETY COMPANY Member of HCC Surety Group
Claims Disbursement Account
Check No: 0000214942 — Check Amount: $5,093.20 — Check Date: 1/8/2020
Vendor ID/Vendor Name: 1180175854/ SMYRNA READY MIX CONCRETE LLC

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 59286-L_420251 | 100407007 | SOLIDSCAPES LLC | 1/6/2020 | 5,093.20 | Any and All Claims, Full and Final Settlement |

SMYRNA READY MIX CONCRETE LLC
1136 2ND AVENUE NORTH NASHVILLE, TN 37208

Stub Total — $5,093.20

UNITED STATES SURETY COMPANY Member of HCC Surety Group
Claims Disbursement Account
Check No: 0000214942 — Check Amount: $5,093.20 — Check Date: 1/8/2020
Vendor ID/Vendor Name: 1180175854/ SMYRNA READY MIX CONCRETE LLC

| CLAIM NUMBER | BOND NUMBER | PRINCIPAL | INVOICE DATE | INVOICE AMOUNT | DESCRIPTION |
|---|---|---|---|---|---|
| 59286-4_420251 | 100407007 | SOLIDSCAPES LLC | 1/6/2020 | 5,093.20 | Any and All Claims, Full and Final Settlement |

Stub Total — $5,093.20

TOKIO MARINE
HCC

UNITED STATES SURETY COMPANY
Member of HCC Surety Group
Claims Disbursement Account
801 SOUTH FIGUEROA STREET SUITE 700
LOS ANGELES, CA 90017

WELLS FARGO BANK, NA

Check No 0000214942
56-382/412

Void After 180 Days

Date 1/8/2020

Amount ***$5,093.20

PAY ****FIVE THOUSAND NINETY-THREE AND 20/100 DOLLARS****

TO THE ORDER OF
SMYRNA READY MIX CONCRETE LLC
1136 2ND AVENUE NORTH
NASHVILLE, TN 37208

Authorized Signature

⑈0000214942⑈ ⑈041203824⑈ 9671451137⑈

Exhibit C